[Civ. No. 419. Third Appellate District.—February 6, 1908.]

# W. H. GURNSEY, Respondent, v. NORTHERN CALIFORNIA POWER COMPANY, Appellant.

HIGHWAY—RIGHTS OF ABUTTING OWNER SUBORDINATE TO ALL LEGITIMATE USES.—While the rights of individuals to their property should be carefully conserved, the title which the owner in fee holds in the land of a highway during the existence of the easement of the public therein should be declared subject to all legitimate uses of a highway in harmony with the advanced methods and growing demands of modern society.

ID.—LIGHTING OF HIGHWAY—POWER OF SUPERVISORS—FRANCHISE.— Within the spirit and purpose of the law, the lighting of an urban or suburban highway may be considered incidental to the use contemplated by the dedication, as tending to promote the comfort, convenience and facility of travel over the highway; and the determination of the necessity for such lighting in any particular case is clearly within the authority of the board of supervisors or other local legislative body charged with the duty to maintain, manage and control the highway, and a franchise granted for such lighting is for ''a lawful purpose.''

ID.—POWER OF COURT.—The action of the governing body in granting a franchise for the lighting of a highway is not subject to revision by the court, in the absence of any showing that there has been an abuse of discretion or excess of jurisdiction.

ID.—USE OF LIGHTING POLES AND WIRES FOR ELECTRIC POWER.—The fact that the poles and wires used for lighting purposes were also, by the terms of the franchise, to be used for the transmission of electricity for electric power for private uses, does not affect the validity of the franchise for lighting the highway.

ID.—ACTION OF EJECTMENT—PLEADING OF FRANCHISE IN DEFENSE.—In an action of ejectment to recover the possession of the portion of the highway adjoining plaintiff's premises on which the poles and wires were erected, in the pleading of the franchise in defense, it is not necessary to allege that the board of supervisors determined

the necessity for lighting the highway; but it is sufficient to aver in substance that the order granting the franchise was duly given or made; nor is it necessary to allege that the board of supervisors entered into a contract with the defendant for the lighting of the road.

ID.—AVERMENT OF ORDINANCE—IMPLICATION.—Although an ordinance granting the franchise is not directly pleaded, the averment being that "defendant only claims the right to use the portion of said highway . . . under and by virtue of the said ordinance and franchise," still considering the answer as a whole it sufficiently alleges the enactment of an ordinance granting the franchise, as against a general demurrer to the answer. The granting of the franchise alleged, which could only be by ordinance, implies that it was done in pursuance of an ordinance.

ID.—REMEDY BY EJECTMENT.—If the franchise granted were wholly without authority of law, ejectment by the abutting owner of half of the roadway would be a proper remedy.

APPEAL from a judgment of the Superior Court of Tehama County.   J. F. Ellison, Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, for Appellant.

P. H. Coffman, for Respondent.

BURNETT, J.—The complaint is in ejectment. It contains the allegation that "the defendant without title and without the consent of the plaintiff, entered upon and into the possession of the said lands and premises, and has dug holes and erected poles thereon, and has strung, built and erected wires and an electric power line for a distance of about two miles on and over the said lands, . . . and has maintained and used the said poles, wires and power line thereon for the purpose of conveying electricity for power."

In its answer defendant seeks to justify on the ground that it is "a corporation organized for the purpose of furnishing the public along its lines with electricity for power, heating and lighting purposes, including the lighting of the highways, and for the purpose of furnishing municipalities and the people of incorporated and unincorporated cities and towns and the authorities thereof with electricity for the purpose of heating, lighting and power, including the lighting

of highways''; that over the lands described in the complaint a. public highway extends which has been used as a wagon road for more than forty-five years; ''that on the tenth day of October, 1902, after due and legal notice had been given, and after the requirement of law had been duly complied with, the honorable board of supervisors of Tehama county, in pursuance of law, at a regular meeting thereof, granted the said Northern California Power Company the right and privilege of erecting poles and stringing wires thereon for the transmission of electricity and electric current over, along and upon the roads, bridges and highways of said Tehama County for a period of fifty years . . . and said franchise applied to said road at that time; that since the granting of said franchise the said defendant has constructed and erected over said public highway where it crosses the lands of said plaintiff a power pole line for the purpose of conveying electricity and electric current, which said power pole line has been constructed for the purpose of heating, lighting and power purposes and for the purpose of connecting up with other portions of the system of the defendant so that the said defendant might furnish power and light to towns, cities and municipal governments, and for the purpose of lighting public highways leading to and from cities and towns, both incorporated and unincorporated. That the said portion of said line which crosses the public highway over the lands of the plaintiff are intended to be used for lighting public highways both in incorporated towns and the other highways over which it may cross, including the public highway across the lands of the plaintiff herein.

''That the said defendant is a public service corporation, and as such has been granted a franchise on, over, and upon said public highway where it crosses the lands of plaintiff and any other place in the said county, for the purpose of transmitting electricity and electric current for power, light and other useful purposes, including the lighting of the highway over which it crosses, and that the said defendant is now and for a long time past has been actually engaged under contract with abutting owners in lighting said public highway herein described, and the said defendant if ejected from said premises and compelled to remove its power

pole line cannot fulfill said contracts and cannot light said public highway.''

The plaintiff demurred to the answer on the general ground and also for uncertainty, among others, for the following reasons, that it cannot be ascertained: 1. Whether the board of supervisors ever granted by ordinance or otherwise any franchise to defendant; 2. Whether defendant is bound by contract or otherwise to light for the public and furnish light for public use on the public highway on and across the plaintiff's said lands; and 3. Whether it is a public necessity to construct and maintain poles and a power line on or to light the public highway which is on and across plaintiff's said lands.

The demurrer was sustained, but on what particular ground it does not appear, and the default of defendant having been entered judgment was rendered for plaintiff, from which the appeal has been taken.

The following questions are treated by counsel as of vital and controlling importance in the determination of the appeal and to them our attention will be directed: 1. Did the board of supervisors have authority to grant to defendant the franchise described in the answer, which could be legally exercised without compensation being paid to the abutting land owners? 2. Conceding that such action is within the scope of the power of the board, is there a sufficient allegation of the fact that said board of supervisors granted to said defendant the said franchise? and 3. Assuming that plaintiff is right in his answer in the negative to the first question, is ejectment his remedy?

The main controversy hinges upon the extent of the control and authority of the board of supervisors over the highways of the county. The respondent contends that ''The poles and power line are an additional burden on the fee in the land over which the highway passes, which cannot be imposed or maintained without the consent of the owner''; and the appellant insists that the power which it claims was exercised by the board is within the contemplation of subdivision 4 of section 25 of the County Government Act of 1897, [Stats. 1897, p. 458], which provides that the board of supervisors has power ''To lay out, maintain, control, construct, repair and manage public roads, turnpikes, ferries,

wharves, chutes and other shipping facilities and bridges within the county," the position being that "the words *maintain, control* and manage give the board of supervisors power among other things to light the highways." Furthermore, appellant cites subdivision 35 of section 25 of said act authorizing the board of supervisors "To grant franchises along and over the public roads and highways for all lawful purposes, upon such terms and conditions as in their judgment may be necessary and proper, and in such manner as to present the least possible obstruction and inconvenience to the traveling public," and declares that "we know of no decision or law which in any way indicates that a franchise such as is held by the defendant in this case is not for a lawful purpose."

It is not disputed that the board of supervisors has control of the public highways and has authority to grant franchises for "all lawful purposes," but it is contended by respondent, and it must be obvious, that this authority of the board has relation to the purpose for which a highway is dedicated and is limited by the uses, primary and incidental, to which under the law a highway is devoted. In other words, the "lawful purpose" must be consistent with the character and in furtherance of the design of the easement which the public has in and to the highways. The nature of such easement is disclosed in section 2631 of the Political Code as follows: "By taking or accepting land for a highway, the public acquire only the right of way and the incidents necessary to enjoying and maintaining it subject to the regulations in this and the Civil Code provided."

The only right, then, which the public has in and to the highway is to use it for the purpose of traveling over it without obstruction or interference; and the control which the board of supervisors can lawfully exercise must have in view the promotion of that use and cannot extend beyond whatever is necessary to facilitate travel. With the exception of such use and control all interest in the soil over which the highway extends belongs to the abutting land owner and, as held in many cases, he "retains his right for all purposes which are consistent with the full enjoyment of the easement acquired by the public. This right of the owner may grow less and less as the public need increases; but at all times he retains all that is not needed for public uses, subject, how-

ever, to municipal or police regulation.'' (*Colegrove Water Co.* v. *City of Hollywood,* 151 Cal. 425, [90 Pac. 1053], and cases cited.)

The first question to be settled is, therefore, whether the lighting of the highway tends to facilitate and accommodate travel. In other words, does it promote the use for which a highway is dedicated and hence included within the scope of the control of the board of supervisors over the highways, which is delegated by the provisions of the statute? The precise point has not been decided by our supreme court, but we are not without valuable suggestions from other jurisdictions, and we are aided somewhat by the opinions of standard authorities upon the subject.

In section 331, Joyce on Electric Law, we have an epitome of various decisions as follows: ''Although a rural highway may not be subject to the same burdens or easements as city streets, yet in its dedication or appropriation as a highway, it is made impliedly subject to such uses as the public may in the future require. The distinction as to the use of city streets and highways arises out of the necessary requirements of the public in the use made of them. We have seen that in the case of telegraph or telephone lines upon rural highways the weight of authority supports the conclusion that they constitute an additional servitude. In the construction and maintenance of poles and wires of an electric lighting company upon which are suspended wires and lamps for the purpose of lighting the highway, however, there is a use different from that of the telegraph or telephone lines. In the case of the latter the poles and wires are not used in any sense for a street or highway purpose. The primary object of the highway is for the use of the traveling public, and any reasonable means tending to promote the safety and convenience of travelers is a proper use. The lighting of many of the country highways may not be necessary, yet in a large number of cases a rural highway, especially where a main avenue of connection with a large city, may be used to such an extent for the purpose of travel that the lighting thereof may be such a benefit to the traveling public, and so promote its safety and convenience that it may be said to be a necessity, and be within the proper uses to which a highway may be devoted, and for which an abutting owner is not entitled to compensation.''

In case of a highway that is merely a country road and but lightly traveled, however, the author states the rule to be that such poles and wires constitute an additional burden, entitling the abutting owner to compensation.

Lewis, in his work on Eminent Domain, section 131a, says: "It seems beyond question from the authorities that under the general power to improve streets and render them more convenient and safe for travel, the public authorities may provide for lighting them at night. If this is so, it can hardly be that such authorities are limited to any particular kind or system of lighting. It follows that poles and wires may be placed in the street for the purpose of lighting them by means of electricity. Such a use is directly connected with and incidental to the public right of passage. The abutting owner would have no ground of complaint, in the absence of any abuse of the right to so use the street."

Elliott, in his work on Roads and Streets, section 397, calls attention to the distinction between urban and suburban highways, and states what is generally recognized by the authorities, that, "The owner of the dominant estate in an urban servitude has very much more authority and much greater rights than the owner of the dominant estate in a suburban servitude. The easement of the one is very much more comprehensive than that of the other," and in section 399 et seq. he describes the extent of the control of the roads by highway officers as follows: "Whatever is necessary to be done in order to make a safe, convenient public country road, the highway officers may lawfully do. . . . They may not use it for purposes entirely disconnected with the purpose to which it was set apart, but they may use it for public purposes legitimately connected with the system of highways of which it forms a part, for great as are the rights of the owner of the servient estate, they are nevertheless subordinate to the right of the public, and by this paramount right they are always limited."

More specifically as to the question under consideration here it is said in section 404: "If the light is for the highway and it is necessary to make it safe and convenient for free passage, then it is probable that the highway officers would have a right to dig trenches and lay pipes, for we think it must be the law that where it is necessary to secure gas to light the public way, and thereby make it safe, the highway

officers may use the way for a pipe-line.   To make our meaning plain, suppose, for example, there is a dangerous bridge or other place in a rural highway much traveled after night, and that the best and most convenient mode of lighting and making it safe is by conveying gas to it from a place near by, would not the highway officers have a right to dig trenches and lay pipes in the road for the purpose of lighting the dangerous place and thus make it safe for passage? To our minds it seems clear that they would have this right.''

In Keasbey on Electric Wires it is declared that electric light wires sustain the same legal relation to streets and highways as gaspipes, and that the same principles apply to both. The author, in section 108, quotes with apparent approval from Judge Dillon to the effect that the use of the streets under legislative or municipal sanction for the purpose of laying down gaspipes or other pipes for the purpose of supplying the city and its inhabitants with light is a legitimate use of the streets for which the abutting owner is not entitled to compensation, and in section 109 it is said: ''With the rapid growth of population around the large cities, it is not always easy to distinguish between city streets and country roads.   Suburban roads soon require the conveniences of city streets; and as electric wires are not often carried where there are so few houses that the light is not needed along the line of the street, it is hardly necessary to decide whether they would be an additional servitude upon the land in such a case.   It is pretty safe to say that if the poles and wires may be used in city streets without compensation, they may be used in the same way wherever they are needed for the same reason,'' and the author claims it is well settled that wherever the local government has authority to provide for lighting the streets an abutting land owner is not entitled to compensation for the mere use of the soil or for anything except injury to his easement or damages arising from negligent construction.

Many cases are cited by respondent in support of his contention that a license from the board of supervisors or other legislative body to erect poles and string wires upon the highway imposes an additional burden upon the freehold which is not authorized without a grant from the owner of the fee. Some of these are not in point.   But there is some conflict in the authorities upon the subject, but where the facts of

each particular case are considered the conflict generally is more apparent than real.

For instance, in *Kincaid* v. *Indianapolis Natural Gas Co.,* 124 Ind. 577, [19 Am. St. Rep. 113, 24 N. E. 1066], the supreme court of Indiana said: "A use for any other than a legitimate highway purpose is a taking within the meaning of the constitution, inasmuch as it imposes an additional burden upon the land, and whenever land is subjected to an additional burden the owner is entitled to compensation. The authorities, although not very numerous, are harmonious upon the question that laying gaspipes in a suburban road is the imposition of an additional burden, and that compensation must be made to the owner." In that case, however, there was no contention that the gaspipes were to be used for the benefit of the highway, of which the claimant was the abutting owner of the fee, but the gas was to be conducted to a distant city.

We cannot agree with the doctrine announced in some of the cases cited, but our judgment yields assent to the more progressive and enlightened understanding, as we conceive it, or, as said in *Montgomery* v. *Santa Ana etc. Ry. Co.,* 104 Cal. 192, [43 Am. St. Rep. 89, 37 Pac. 788], "a broader and more comprehensive view of the rights of the public in and to the streets and highways of city and county," and while we should carefully conserve the rights of individuals to their property, the title which the owner in fee holds in the land in a street or highway during the duration of the easement of the public therein should be declared subject to all legitimate uses of a highway in harmony with the advanced methods and growing demands of modern society.

We are satisfied that within the spirit and purpose of the law the lighting of an urban or suburban highway may be considered incidental to the use contemplated by the dedication, that it tends to promote the comfort, convenience and facility of travel over the highway; that the determination of the necessity for said lighting in any particular case is clearly within the authority of the board of supervisors or other local legislative body charged with the duty "to maintain, control and manage" the public highways; that the franchise in the case at bar was granted for a "lawful purpose," and that the action of the said board is not subject to revision by the court in the absence of any showing that there

has been an abuse of discretion or excess of jurisdiction in said action.

We understand that the conclusion from the foregoing statements is not affected by the consideration that the poles and wires are to be used for private purposes as well as for the illumination of the public highways.

In Lewis on Eminent Domain, section 131, it is said: "In regard to poles and wires to be used for both public and private lighting, the logical position would seem to be that the abutting owner would be entitled to a remedy to the extent of the unlawful use." But if he have any remedy it must be apparent that it cannot be ejectment, because that would destroy the lawful as well as the unlawful use; it must be by injunction to restrain the unlawful use or by an action for damages, if at all. It would be a narrow and technical view that would inspire us to hold that because the poles and wires are also to be used for private purposes, the board of supervisors is precluded from granting a franchise which is to be exercised for the safety, convenience and comfort of the traveling public.

Again, we do not understand that defendant is required to allege that the board of supervisors determined that it was necessary to light the highway. This is one of the jurisdictional facts, which the board was called upon to determine, it is true, but the statute has obviated the necessity for pleading it. It is sufficient to aver substantially that the order granting the franchise was duly given or made. (Code Civ. Proc., sec. 456.)

Neither do we think the answer defective because of the omission of any allegation that the board of supervisors has entered into any contract with defendant for the lighting of said road. A justification for the occupancy of the highway is found in the allegations that the franchise was granted to defendant by the board of supervisors for the purpose of lighting the said highway; that in pursuance of said provision defendant has erected its poles and constructed its wires for said purpose, and has performed and is performing said service. It is true that the allegation is that the contract for lighting was made with the abutting owners, but it can be no concern of plaintiff's if they are willing to pay for the service rather than to have it made a charge against the county, as the public is receiving the benefit. Assuming that in the

defense to an action of ejectment it must appear that the defendant who relies upon a franchise to justify possession must show that he is complying with the terms of said franchise; this fact sufficiently appears in the answer when properly construed.

Since the facts showing the jurisdiction of the board of supervisors are not alleged, the more difficult question is whether there is a sufficient averment of the action of the board in granting the franchise. The contention is that it cannot be determined whether the privilege was conferred by virtue of an ordinance or otherwise, and also the allegation that the board "granted" the right and privilege is rather a conclusion of law than of fact. In support of his contention respondent cites *Young* v. *Wright*, 52 Cal. 410, *Judah* v. *Fredericks*, 57 Cal. 391, and *City of Los Angeles* v. *Mellus*, 59 Cal. 451.

In the first it is held that "duly rendered" is not equivalent to "duly given or made"; in the Judah case it is held that the allegation that "the plaintiff is the duly qualified and acting executrix of the last will and testament of J. F., deceased," is not a sufficient averment of her official character, and in the last it was held that the allegation "an order was made" is not equivalent to "an order was duly made." But the later decisions do not indulge in such subtle refinement. In *Collins* v. *O'Laverty*, 136 Cal. 33, [68 Pac. 327], the ruling in the Judah case is questioned, and in *Clark* v. *Nordholt*, 121 Cal. 26, [53 Pac. 400], the application of the rule embodied in section 456, *supra,* is limited to courts of inferior jurisdiction. But conceding that we are dealing with an inferior tribunal exercising judicial functions, we think there has been a substantial compliance with the requirement of said section 456. The word "grant" is synonymous with "give" (Webster's Dictionary); and we can see no substantial difference between "duly given" and given "after the requirements of law had been duly complied with." The pleader has used, as we view it, unnecessary circumlocution, as it would have been an exceedingly simple matter to allege that the board by ordinance or resolution duly given and made granted, etc., thus avoiding the question we are now considering. While there is no direct allegation that it was

through an ordinance that the privilege was granted, there is an averment that "defendant only claims the right to use the portion of said highway . . . under and by virtue of the said ordinance and franchise," and considering the answer as a whole, we are of the opinion that it sufficiently alleges the enactment of an ordinance granting to the defendant the said franchise.

The following cases exhibit the more liberal and reasonable trend of judicial construction of said rule of pleading: In *Los Angeles* v. *Waldron,* 65 Cal. 283, [3 Pac. 890], it is held that the expression, "duly passed and adopted the ordinance," is sufficient. In *Pacific Paving Co.* v. *Bolton,* 97 Cal. 9, [31 Pac. 625], "duly gave and made its determination to order the work done" is upheld. In *Williams* v. *Bergin,* 127 Cal. 578, [60 Pac. 164], the allegation, "The board of supervisors duly made and passed a resolution" is approved.

In *Werth* v. *Springfield,* 78 Mo. 107, and *Stewart* v. *Clinton,* 79 Mo. 603, it is held that "when the complaint avers an act which can be done only under an ordinance, an allegation that it was done by the corporation implies that it was done in pursuance of an ordinance."

As to the question of proper remedy for plaintiff upon the theory that defendant is occupying the highway without authority of law, there can be no doubt that an action in ejectment will lie. In section 647 of Lewis on Eminent Domain it is said: "The owner of the fee of a highway can maintain ejectment against any person occupying the soil for any purpose not connected with its use as a highway."

Elliott, in section 708, says: "As owner of the fee, subject only to the public easement, the abutter has all the ordinary remedies of the owner of the freehold."

In Encyclopedia of Pleading and Practice, volume 7, page 269, it is stated that "as a general rule, ejectment will lie to recover possession of land which is subject to an easement or servitude. The most common application of this rule is found in the case of highways, roads, streets and the like. These in our law are regarded as easements, and the owner of the land through which a road or street dedicated to public use passes may maintain ejectment against anyone who appro-

7 Cal. App.—35

priates the same exclusively to his own use or who uses the same in a manner inconsistent with the public easement or with the rights of the said owner to use the land in any way that is itself not inconsistent with the public right.''

The question, indeed, is settled by a long line of authorities. It does not properly arise upon consideration of the complaint, as it includes no allegation in reference to a highway. It contains the usual averments in ejectment except it points out the peculiar method of occupancy by virtue of placing the poles and stringing the wires, and the demurrer was properly overruled. But since it is conceded that the rights in and to the highway are involved, we deem it proper to say that if at the trial defendant should not be able to prove the franchise upon which it relies, plaintiff can be granted adequate relief under the issues as presented.

While defendant's pleading is not altogether satisfactory and somewhat inartificial in some respects, we have reached the conclusion that the demurrer to the amended answer should have been overruled. We announce this with less reluctance because there is no pretense that plaintiff has suffered any actual damage by the improvement constructed by defendant, which would seem to contemplate in a large measure the promotion of the public welfare.

The judgment is reversed.

Chipman, P. J., and Hart, J., concurred.