[Sac. No. 1745. In Bank.—September 8, 1911.]

W. H. GURNSEY, Respondent, v. NORTHERN CALIFORNIA POWER COMPANY (a Corporation), Appellant.

HIGHWAYS—EXTENT OF EASEMENT OVER PRIVATE LANDS—CONTROL BY SUPERVISORS LIMITED.—The easement or right which the public acquire by the establishment of a highway over private lands, is the right to travel thereover; and the only control over it which the

board of supervisors, as trustees for the public, can exercise, is such as is necessary to maintain the highway in a proper and convenient manner for the exercise of the use by the public.

ID.—RIGHTS OF OWNER SUBJECT ONLY TO EASEMENT AND INCIDENTAL CONTROL.—The owner of land over which the highway passes, retains his right to the soil for all purposes not inconsistent with the easement, and to all profit and advantage which may be derived therefrom; and a municipality may not confer upon any one the right to enter upon such highway, and occupy any portion thereof, without the consent of the owner, when such entry is not for purposes incidental to the effective use by the public of the highway, or for incidents necessary to enjoying and maintaining the right of way, subject only to the regulations provided in the Political and Civil Codes.

ID.—PROPER CONTROL OF HIGHWAYS—FRANCHISES UNDER COUNTY GOVERNMENT ACT—LIGHTING AT NIGHT.—The power given to the board of supervisors "to grant franchises for all lawful purposes, upon such terms and conditions as in their judgment may be necessary and proper and in such manner as to present the least possible obstruction and inconvenience to the traveling public," under the County Government Act of 1897, has in view such franchises as will aid the easement, and promote the public comfort and convenience in its use. In a proper case, it may include the lighting of public highways at night, without imposing any additional servitude of which the abutting owner may complain.

ID.—FRANCHISE FOR SPRINKLING HIGHWAY.—It is held, that it may be conceded, without so deciding, that a franchise to an electric light company to erect its system over a highway for the purposes of furnishing power at a pumping plant erected thereon, for water to be used in sprinkling a highway, may be justified for the same reason that authorizes the franchise for lighting the highway.

ID.—GENERAL FRANCHISE FOR POLES AND WIRES FOR ELECTRIC CURRENT—POWER, LIGHT, AND OTHER USES FOR CUSTOMERS.—The board of supervisors may justify the use of the easement for any useful purpose which does not trespass upon the rights of the owner of the soil, but it cannot grant a general franchise to erect poles and wires over all the roads of the county for the purpose of conducting and transmitting electric current for power, light, and other necessary and useful purposes, thereby invading the property rights of the owner of the soil by digging holes thereon and erecting poles, for the furnishing of its own customers with such power, light and other uses.

ID.—INVALID ENTRY UPON PRIVATE SOIL—SUBSEQUENT CONTRACT WITH COUNTY NOT A JUSTIFICATION.—Where there was an invalid entry by the electric company with its poles and wires on private soil, a subsequent contract with the county to purchase power from it, did not validate its occupancy of such soil.

ID.—GENERAL FRANCHISE PROTECTING USE OF EASEMENT—SUBORDINATE
TO RIGHTS OF OWNER OF FEE.—The general franchise can only pro-
tect the grantee thereof in the use of the easement; but it must be
taken in subordination to the paramount rights of the one who
owns the fee, and cannot warrant any invasion of his rights without
his consent, or without compensation.

ID.—REMEDY OF PROPERTY-OWNER — EJECTMENT — GENERAL RULE—EX-
CEPTIONS.—While it is a general rule that one may maintain eject-
ment against either an individual or corporation, who has without
right entered upon his land, this rule is subject to some exceptions.

ID.—PERMITTED ENTRY BY PUBLIC SERVICE CORPORATION—ERECTION OF
WORKS—EJECTMENT NOT ALLOWED—DAMAGES.—When a public ser-
vice corporation, though it made its original entry upon an owner's
land without right, has been permitted to enter thereon and construct
the works for which such land was appropriated, and such owner
has failed to bring any action, until public interests by reason of
such construction has intervened, the right of such owner to main-
tain ejectment against such public service corporation is denied, and
he will be remitted solely to his action for damages as the measure
of his compensation.

ID.—BASIS OF EXCEPTION—PUBLIC POLICY.—The exception which forms
the rule as to public service corporations, is not based upon any con-
sideration of the rights pertaining to the public service corporation
itself, nor solely upon the doctrine of estoppel of the owner, but is
based mainly on the great principle of public policy under which
the rights of the citizen may be abridged in the interest of the public
welfare.

ID.—CONDITION OF COMPENSATION UNDER CONSTITUTION—WAIVER OF PER-
SONAL RIGHT.—Although the constitution provides that private prop-
erty may not be taken for public use, unless compensation is first
paid to the owner, yet this condition is for the sole benefit of the
owner of the land, and like any other personal right, may be insisted
on by him or waived, at his pleasure.

ID.—RULE OF PUBLIC POLICY APPLIED.—The rule of public policy is ap-
plied in a case such as this, when the plaintiff has stood by without
asserting a right which he might have invoked, until the corporation
charged with a service, public in its nature, has completed its electric
line over his land, and is actually engaged in discharging an ad-
vantageous and important public duty, under which circumstances,
public policy requires that the remedy of ejectment should be de-
nied to the plaintiff, to the destruction of the public rights which
have intervened.

ID.—RIGHT TO COMPENSATION NOT LOST.—The mere waiver of the right
to compensation, as a condition precedent to the entry, does not de-
prive the owner of his right thereto, but merely deprives him of his
right to maintain ejectment. The compensation is all that he could
have required to be first paid, before his land was taken for public
use; and he may still recover the same.

APPEAL from a judgment of the Superior Court of Tehama County and from an order denying a new trial. James F. Ellison, Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, for Appellant.

P. H. Coffman, for Respondent.

LORIGAN, J.—Plaintiff is the owner in fee of a large tract of land near Red Bluff in Tehama County, across which for over forty years a public wagon road or highway, commencing at Red Bluff and running to the easterly boundary of the county, has existed.

Defendant is a public service corporation, organized for the purpose of furnishing the public along its lines with electricity for power, heat, and lighting and also furnishing municipalities, cities, and towns with electricity for like purposes, including the lighting of highways, and when this action was brought was engaged in furnishing it for these purposes in the counties of Shasta, Glenn, and Tehama.

In October, 1902, defendant applied to and obtained from the board of supervisors of Tehama County a franchise, the material provision of which involved here is as follows: "The right, privilege and franchise is hereby granted the Northern California Power Company, its successors or assigns, to erect poles of not less than six inches in diameter at the top, and stretch wire and other appliances thereon for the purpose of conducting and transmitting electric current for power, light, and other necessary and useful purposes, over and along the county roads, bridges and highways of said Tehama County, and along the streets, alleys and avenues of the various unincorporated towns and villages in said county." This franchise was granted for fifty years.

In 1903 defendant built a power-pole line from its electrical station in Red Bluff easterly along the public highway referred to and over the land of plaintiff to a point where an avenue intersected said public road. In 1906 this line was further extended about a mile along said public road across the land of plaintiff to the premises of the Cone Ranch Company. In June,

1906, plaintiff brought this action in ejectment, alleging: "That the defendant, without title and without the consent of the plaintiff entered upon and into the possession of the said land and premises and has dug holes and erected poles thereon and has strung, built and erected wires and an electric power line for a distance of about two miles on and over the said lands."

In its answer defendant set up that it was a public service corporation, organized for the purpose of and actually engaged in the business of furnishing electricity for the purposes heretofore stated, and the fact that it had obtained a franchise from the board of supervisors of Tehama County granting it the privilege of erecting poles and stringing wires thereon along the county roads and highways of said county; that it had erected a power-pole line along the highway in question where it crosses the land of plaintiff for the purpose of furnishing power, heat, and lighting, and for the purpose of connecting up with other portions of its system, so as to furnish power and light to towns, cities and municipal governments, and for the purpose of lighting public highways leading to and from cities, both incorporated and unincorporated; that the portion of its line which crossed the public highway over the land of plaintiff was intended to be used for lighting public highways over which it might cross, including the public highway across the land of the plaintiff herein, and for furnishing electric power for pumping water along said public highway, to be used in sprinkling the same; that it was and for a long time past had been actually engaged, under contract with the board of supervisors of Tehama County, in lighting said highway and in furnishing electric power along the line of said public highway for pumping water to be used in sprinkling the same, and that if compelled to move its power-pole line from the highway it could not fulfill its contract to light said public highway or provide electric power on said highway for pumping water for said sprinkling purposes.

It was further alleged that defendant did not claim to hold said highway or any part thereof exclusively from the plaintiff or the public or any one else, but only claimed the right of use to that portion of the highway actually occupied by its power poles in common with the public under and by virtue of the franchise granted it by the board of supervisors of Tehama County, and not otherwise.

The court found that plaintiff was the owner of the fee in the land over which the public highway crossed, and on which defendant had erected its power-pole system, and that it had been granted a franchise, as alleged, permitting it to erect its poles over the roads and highways of the county; that while defendant was organized to engage in the business of furnishing electric power for all purposes claimed by it, including the lighting of highways, the line in question, starting from the station of defendant in Red Bluff and running on said highway over and across the land of plaintiff to its eastern terminus near the Cone Ranch, was not constructed for the purpose of lighting that or any public highway or for the purpose of furnishing power to pump water on said highway to be used for sprinkling purposes, and that it never at any time had been actually engaged under a contract with the board of supervisors of Tehama County in lighting any portion of said highway along or across the land of plaintiff.

Upon the findings so made the court entered a judgment for possession and restoration of the premises described in the complaint, and that defendant and its poles and power lines be ejected and removed from said premises.

The main points for consideration on this appeal are whether the board of supervisors had power to grant a franchise to the defendant, authorizing it to enter upon the highway, the fee to which was in the plaintiff, and erect its power-pole system thereon without permission of or compensation being first paid to plaintiff as the owner of the land, and, if it did not, and the entry of the defendant thereon was unauthorized and unwarranted and an invasion of the property rights of plaintiff in the fee of the land, was plaintiff entitled to maintain an action in ejectment to cause its removal therefrom?

The first proposition is presented for consideration under what the appellant claims was the effect of the franchise granted it by the board of supervisors, and also under an attack which is made upon the findings of the court that it had not been granted a franchise for the lighting of the highway or for the purpose of furnishing power to the pumping station of the county for road-sprinkling purposes, and was not built for either of these purposes.

There is no question in this case but that plaintiff is the owner of the fee in the land in question, and entitled to the

full beneficial use of it, subject to the easement or limited fee which the public has in the highway over it.

It is well settled that the easement or right which the public acquires by the establishment of a highway is the right to travel thereover, and that the only control over it which the board of supervisors, as trustees for the public, can exercise, is such as is necessary to maintain the highway in a proper and convenient manner for the exercise of the use by the public.

Aside from this, the owner of the land retains his right to the soil for all purposes not inconsistent with the easement, and to all profit or advantage which may be derived therefrom, and a municipality may not confer upon any one the right to enter upon such highway and occupy any portion thereof without the consent of the owner of the soil when such entry is not for purposes incidental to the effective use by the public of the highway.

All that the public acquires under the easement is declared by section 2631 of the Political Code, as follows: "By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided."

This is but the declaration of the general rule on the subject stated in the case quoted from in *Wright* v. *Austin*, 143 Cal. 236, 240, [101 Am. St. Rep. 97, 65 L. R. A. 949, 76 Pac. 1023], where it is said to be well established: "In conformity with the principles of the common law that a highway is simply an easement or servitude conferring upon the public only the right of passage over the land on which it is laid out, and as an incident of such right that of using the soil or material upon it in a reasonable manner for the purpose of making and repairing it. . . . Subject to this right of the public, he may take trees growing upon the land, occupy mines, sink watercourses under it, and generally has a right to every use and profit which can be derived from it consistent with the easement, and when disseized (as he may be) can maintain ejectment, and recover possession subject to the easement, and can also maintain trespass for any act done to the land not necessary for the enjoyment of the easement, which would be an actionable injury if the land was not covered by a highway."

CLX Cal.—45

Authority, it is true, is given to the board of supervisors of any county "to grant franchises over and along the public roads and highways for all lawful purposes, upon such terms and conditions as in their judgment may be necessary and proper and in such manner as to present the least possible obstruction and inconvenience to the traveling public." (County Government Act, 1897, Stats. 1897, p. 466, subd. 35 of sec. 25.) This right given to the board to grant such franchises "for all lawful purposes" has in view primarily a purpose in aid of the easement; something which will promote the public comfort and convenience in the use of the highway.

It may be that a public highway, by reason of its proximity to a large city, is so heavily traveled that in the judgment of the county authorities it would be necessary, to promote the convenience, and safety of the traveling public, that the highway be lighted. It seems to be well settled by the weight of authority that, under a general power over public highways to promote the safety and convenience of the public travel thereover, the authorities have a right to provide for the lighting of such highway at night. And for that purpose a public service corporation may be granted a franchise to erect its poles thereon; that such a use of the highway for the purpose of lighting it is incidental to the full enjoyment of the public easement imposing no additional servitude of which the abutting owner can complain.

This matter is treated fully in *Gurnsey* v. *Northern California etc. Co.*, 7 Cal. App. 534, [94 Pac. 858], to which reference is made on the subject.

It may be conceded, too (though we do not so decide), that a franchise to an electric light company to erect its system over a highway for the purpose of furnishing power at a pumping plant erected thereon, for water to be used in sprinkling a highway, may be justified for the same reason that authorizes the franchise for lighting the highway.

But, conceding all this, it is clear that the franchise attempted to be granted by the board of supervisors to this corporation was not for either of these purposes, and this brings us to a consideration of the franchise actually granted by the board of supervisors to the appellant, as also to a consideration of its attack upon certain of the findings.

It is claimed as to the franchise granted by the board of

supervisors, that it was in effect a contract between the county
and the appellant that its electric system should be erected for
the purpose of lighting the highway. There is no merit what-
ever in this claim. The franchise was in general terms, and
granted permission to the appellant corporation to place its
poles and string its wires over all the roads and highways of
Tehama County, for the purpose of conducting and trans-
mitting electric current for power, light, and other necessary
and useful purposes. It was granted, obviously, under the
provision of the County Government Act of 1897 heretofore
referred to and followed its language. If it be conceded that
the board could grant such a franchise, all that it undertook
to do was to give the company permission to enter upon the
public easement, which was under the control of the board as
trustees for the public, an entry upon which by the company,
without such permission, would have made it a trespasser upon
the easement. The board could not confer permission on the
company for purposes, not incidental to the proper use of the
highway, to invade the property rights of plaintiff in the soil
by digging holes therein and erecting poles. Not a word is said
in the franchise about lighting any highway. The board of
supervisors did not at any time authorize the construction of
this electric system along the highway in question for lighting
it. No action was ever taken by the board declaring that it was
necessary to do so; no contract was ever entered into by the
board with the company for any such lighting, and the high-
way was in fact never lighted by the appellant. A board of
supervisors has no authority to grant a general franchise to
any one to light all the highways in the county, and it would
be an entirely unwarranted construction of the ordinance
authorizing the appellant generally to occupy any and all of
the roads and highways in a county, to say that it amounted to
a contract with the board to light any and all of the roads and
highways generally referred to in the ordinance. Nothing
of the kind was contemplated by the board, nor was the system
constructed across the highway by the appellant for that pur-
pose. The evidence clearly shows that the first extension of
the line from the electric station in Red Bluff to an avenue
leading to the land of General N. P. Chipman, was built in
1903, solely for the purpose of supplying power for pumping
purposes on the premises of General Chipman, and furnishing

light to those premises, under a contract made with him for that purpose before the building of the extension was commenced, and that the extension thereafter, in 1906 (the same year this action was brought), from the avenue last mentioned to the Cone Ranch was for the purpose of furnishing power and light at the Cone Ranch Company premises. No doubt the appellant would, after its line was built, have furnished electricity to any one who desired it, but it was built for the purposes indicated.

Under this evidence it is clear that this line was not built for the purpose of furnishing light to the highway, but for purely commercial purposes—the sale of power and light to the Chipman and Cone ranch premises, and to such others as might desire it.

As to the attempt to justify its occupation of the highway over the premises of plaintiff, on the ground that it is under contract with the board of supervisors to furnish power to the county for pumping water for sprinkling the roads. Its original construction was for no such purpose. It appears that years after the appellant had constructed its system over this highway, the board of supervisors installed a pumping plant on the line of the highway for the purpose of sprinkling the road from near Red Bluff to a gate on the Cone Ranch—some three miles—and entered into a contract with the appellant to furnish electric power to the pumping station. It is insisted that, as authority is given to the county to provide means for making the roadway more convenient for travel by sprinkling through the erection of waterworks (Pol. Code, sec. 2643, subd. 10; County Government Act, 1897, sec. 25, subd. 7), that the occupation of the highway by the system of appellant for the purpose, among other things, of furnishing such power, justify its occupation of the highway. We are not cited to any authority sustaining this claim of appellant, nor do we deem it necessary to consider it. As we have seen, the original occupation of the highway was not for lighting nor for furnishing power to the pumping plant, which are the only grounds upon which it can justify its occupation of the highway as against the plaintiff; hence, a subsequent contract with the county, under which it purchased power from the company, cannot justify the original entry. If its entry was invalid in the first instance, this contract to purchase power from it did not validate its occupancy.

It may be, as claimed by appellant, that under the County Government Act, heretofore referred to, empowering the board of supervisors to grant franchises along the public highway "for all lawful purposes," the board of supervisors of Tehama County was authorized to grant to defendant as a public service corporation engaged in discharging a public duty, the right to enter upon the highway. But, if this be conceded, it does not affect the situation here. Such a franchise could only permit an entry upon the easement itself. Such a franchise must be taken in subordination to the paramount rights of plaintiff as the owner of the fee, and would afford no warrant for the invasion of the property rights of plaintiff therein.

Our conclusion, therefore, is that the planting of its power-pole line in the highway over the land of plaintiff, for a purpose not incidental to the use of such highway, is inconsistent with the dedication of the highway to the use of the public. It constituted an additional servitude or burden upon the land of plaintiff beyond the purpose of the dedication, and was an invasion of his property rights therein, for which he was entitled to redress.

Now as to the remedy. It is insisted by appellant that the only remedy available to plaintiff under the circumstances of this case is an action for damages and not ejectment. In this view we are satisfied that the appellant is correct.

While the general rule is that one may maintain ejectment against either an individual or corporation who has without right entered upon his land, this rule is subject to some exceptions. One of these exceptions is applied in the case of public service corporations when it appears that, although the entry was originally without right, the owner permitted the corporation to make the entry on his land and complete and construct the works for which his land was appropriated, and failed to bring any action until after public interests, by reason of the construction, had intervened. Under such circumstances the right to maintain ejectment is denied and the owner of the land is remitted to an action for damages alone.

Jones, in his work respecting Telegraph and Telephone Companies, section 53, says:

"In many cases telegraph and telephone companies enter upon the land of another without the latter's knowledge or

consent, but the fact that they do, or that he permitted them to do so, does not give the company a title or right of way or estop him from maintaining an action for damages; and yet it may preclude him from maintaining any action of ejectment; . . . and should he stand by until the line is completed and in operation and public interests have become involved, he will be denied the right to maintain an action of ejectment or the right to enjoin them. His only remedy under such circumstances is a proceeding brought to recover damages."

This is the rule, too, of the adjudicated cases.

*Indiana etc. Ry. Co.* v. *Allen,* 113 Ind. 581, [15 N. E. 446]; *Reichert* v. *Railway,* 51 Ark. 491, 11 S. W. 696, [5 L. R. A. 183]; *Hanlin* v. *Chicago & N. W. Ry. Co.,* 61 Wis. 515, [21 N. W. 623]; *Kittell* v. *Railroad Co.,* 56 Vt. 96; *Goodwin* v. *Cinn. W. Con. Co.,* 18 Ohio St. 169, [98 Am. Dec. 95]; *Roberts* v. *Northern Pac. R. R. Co.,* 158 U. S. 1, [15 Sup. Ct. 756, 39 L. Ed. 873].) Numerous other authorities might be cited from other jurisdictions. But, in effect, this principle is sustained by the authorities in this state. (*Fresno etc. Co.* v. *Southern Pacific Co.,* 135 Cal. 202, [67 Pac. 773]; *Southern Cal. Ry. Co.* v. *Slauson,* 138 Cal. 344, 94 Am. St. Rep. 58, 71 Pac. 352]; *Crescent Canal Co.* v. *Montgomery,* 143 Cal. 252, [65 L. R. A. 940, 76 Pac. 1032].) In these latter cases it is true there were oral agreements under which the railroad companies went into possession of the land, and in the last case the construction of the canal was with the tacit consent of those who sought to have it abated and removed from their land as a nuisance. The principle, however, upon which the right to maintain ejectment or to quiet title or to abate the canal was denied in those cases, was that as public interests had intervened through the construction and operation of these public agencies before the actions in those cases were commenced, any right of the parties to disturb them in their possession of the property was thereby lost, and only an action to recover compensation for the land taken could be available. In principle there can be no difference, as far as the application of the rule of public policy is concerned, whether the entry is by original consent of the owner, or he permits it to be made and attempts to assert no right until after the public interests have intervened.

In the case at bar a large portion of the original line was

erected over the land of plaintiff in 1903, and the latter part
was built before this action was brought.  These facts show
acquiescence on the part of plaintiff in the occupation of his
land for a long period as to one part of the line constructed
and a failure to bring an action respecting the entry on any
part of his land by the defendant corporation until the con-
struction of its power-pole line had been accomplished over it
and public interests had intervened and, hence, under the
rule, he is precluded from maintaining any action save one
for compensation.

The principle which underlies this rule is not based on any
consideration of rights pertaining to the public service cor-
poration itself, but solely upon considerations of public
policy.  The rights which a public service corporation may
exercise under the power of eminent domain are conferred
upon it on account of its public character and to advance
the interests of the public.  The defendant, as such corpora-
tion, was authorized to proceed and acquire a right of way
over the land of plaintiff.  It is true the constitution provides
that private property may not be taken for public use unless
compensation is first paid to the owner.  But this condition
of compensation to be first paid is solely for the benefit of
the owner of the land and, like any other personal right, may
be insisted on by him, or waived at his pleasure.  He might,
when the defendant corporation commenced the construction
of its electric power system over his land, have stood upon
his constitutional rights and enjoined its entry until he had
been first paid for it, or he could have permitted the defend-
ant to enter thereon and perfect the construction of its sys-
tem for the public benefit.  But when he has thus permitted
by inaction expenditures to be made and public interests to
intervene, he will be deemed to have waived all other
remedies which he might have invoked save that of an action
for compensation.  This rule is not based so much upon the
application of the doctrine of estoppel, under which an owner
of land, who remains inactive and permits a public service
corporation, such as a railroad, telegraph, telephone, electric
power, gas, or water company, to enter upon his land with-
out right and expend large sums of money in constructing
and completing the work, will be deemed to have acquiesced
in the entrance, so that all remedies save one for compensa-

tion will be denied him. It is based mainly on the great principle of public policy under which the rights of the citizen are sometimes abridged in the interest of the public welfare. It is applied in a case such as this, when the plaintiff has stood by, without asserting a right which he might have invoked, until the corporation charged with a service, public in its nature, has completed its electric line over his land, and is actually engaged in discharging a public duty, advantageous and important alike to the social and business interests of the community in proximity to its power lines. Public policy requires that, under such circumstances, the remedy of ejectment should be denied to plaintiff, when the effect of a judgment in such an action would be to destroy the efficiency of the electric line system by taking possession from defendants of that part of it constructed over the land of plaintiff, and thus destroying the public rights which have intervened.

Nor does the application of this rule of public policy, limiting his right so that public interest shall not suffer, work any particular hardship upon the owner of the land. The effect of his inaction until public interests have become involved, only deprives him of his right to maintain ejectment. He may not recover possession, but he may maintain an action under which full compensation may be recovered. This compensation is all he could have required the defendant first to have paid him before it took his land for public use. This compensation he may still have under his present pleading. While the complaint contains the usual averments in ejectment, it sets forth also the particular method of entry and occupancy of his land by defendant,—namely by placing poles therein and stringing wires and avers damages sustained thereby. The trial court should, on the remission of this case for a new trial, permit the plaintiff to amend his complaint in such respects as will permit him to invoke this remedy which is alone available to him—to recover just compensation for his land which the defendant has appropriated for a public use, and any damages sustained thereby.

When this case was before the district court of appeal (*Gurnsey* v. *Northern Cal. etc. Co.,* 7 Cal. App. 534, [94 Pac. 858]), on an independent appeal from the one now under consideration, it was held that ejectment was the proper remedy

available to plaintiff, but with such view, for the reasons above stated, we cannot agree.

The judgment and order appealed from are reversed.

Henshaw, J., Shaw, J., Angellotti, J., Melvin, J., and Sloss, J., concurred.

Rehearing denied.