ENNIS–BROWN CO. v. CENTRAL PAC. RY. CO. et al. (and fifteen other cases).

(District Court, N. D. California, Second Division. December 1, 1915.)

Nos. 88–95, 101–103, 126–130.

1. COURTS ⟐262—FEDERAL COURTS—EQUITY JURISDICTION—SUITS TO QUIET TITLE.
    To sustain a suit in equity to quiet title in a federal court, when complainant is out of possession, the land must be unoccupied land, so that complainant is without an adequate remedy at law.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. ⟐262.]

2. COURTS ⟐262—FEDERAL COURTS—EQUITY JURISDICTION—SUITS TO QUIET TITLE.
    A suit in equity to quiet title cannot be maintained in a federal court against a railroad company with respect to land alleged to be in the ac-

tual possession of defendant and used by it for railroad purposes on an allegation that a portion of the land is not required or needed for such use; the issue so tendered not being one cognizable in equity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. ☞262.]

3. EMINENT DOMAIN ☞284—UNAUTHORIZED TAKING OF LAND BY RAILROAD COMPANY—RIGHT OF ACTION FOR DAMAGES.

A right of action against a railroad company to recover damages for the wrongful taking of land for railroad purposes is in the person holding the legal title at the time of the original wrongful entry.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 789, 790; Dec. Dig. ☞284.]

In Equity. Suit by the Ennis-Brown Company against the Central Pacific Railway Company and the Southern Pacific Company, heard with 15 other cases against the same defendants. On motions to dismiss bills. Motions sustained.

Burrell G. White, of San Francisco, Cal., for complainant.

J. E. Foulds, of San Francisco, Cal., and Devlin & Devlin, of Sacramento, Cal., for defendants.

VAN FLEET, District Judge. This is one of several actions (the numbers of which are above shown) of a precisely similar character, commenced at the same time against these defendants, affecting the title to contiguous portions of the river front in the city of Sacramento. Excepting only as to the name of the plaintiff and the particular parcel of land involved, the bills are in all respects uniform in their averments, and a statement of the facts set forth in the instant bill will serve for all. In form the action is one to quiet title, and, omitting the jurisdictional averments and description of property, the material facts set up in the amended bill are in substance these:

That the complainant "is and at all the times herein mentioned was the owner in fee simple" of the property described, and that the defendants and each of them claim an estate or interest in such property adverse to the plaintiff, which claim is without right, and defendants have not, nor has either of them, any estate, right, title, or interest in or to the property or any portion thereof; that the defendants are, and each of them is, engaged in the general business of railroad corporations as common carriers of passengers and freight; "that the defendant Central Pacific Railway Company is not in possession of the premises involved or any part thereof," but the defendant Southern Pacific Company "is now and at all the times herein mentioned was in possession and using the land hereinabove described"; that it "maintains upon and over a portion of the property described in the amended bill herein a railroad main track, over and upon which it operates trains in the exercise of its said business," and "to prevent the maintenance and operation of said railroad track would interfere with the service of said defendant Southern Pacific Company to the general public"; that on the other portions of said property "said Southern Pacific Company maintains other railroad tracks, which are switching tracks, and a large structure known as the 'Sacramento

Freight Sheds,' and sheds used as a wharf bordering upon the Sacramento river." It is then alleged that "the public interest neither of the inhabitants of the city of Sacramento nor of the county of Sacramento, nor of any other community, requires the maintenance or continuance of said last-mentioned tracks or said sheds by said Southern Pacific Company. All of said tracks herein mentioned and sheds are used exclusively by the defendant Southern Pacific Company, and said company claims that, as a public service corporation, it is entitled to the continuous and exclusive use of said tracks, sheds, and the land upon which the same are situated." Then follows an averment, the materiality of which has not been suggested and is not perceived, as to the location of the property involved with reference to the main business streets of the city of Sacramento and its importance, as a part of the water front for shipping purposes, in the commerce of the city, and "that the public interest of the citizens of the city of Sacramento and of the county of Sacramento and thereabouts requires that said property should not be used exclusively by said defendant Southern Pacific Company," but that such use "is subordinate to the requirement of the public interest that the land upon which said sheds are built should be open to use by others than said defendant."

The amended bill was filed in response to an order of the court, made in each case on motion of defendants, directing that the cause be transferred to the law side unless plaintiff should so amend its bill as to disclose a cause of action cognizable in equity; the court being of opinion that the original bill was lacking in that respect. The material changes in the bill in its amended form are the averments as to the character of the defendants as common carriers or public service corporations, the nature and purpose of the occupation of the premises by the defendant Southern Pacific Company, and the last averment of the bill above adverted to.

The defendants now move to dismiss the bill as amended on the ground that it fails to state a cause of action as against either defendant cognizable either in equity or at law—the objection as to the defendant Central Pacific Railway Company being that, while it is alleged that that defendant is not in possession of the premises in dispute, it appears that the Southern Pacific Company is in such possession, and that an action to quiet title will not lie unless the plaintiff is in possession or the defendants are out of possession; and as to the defendant Southern Pacific Company: (1) That, upon the facts alleged, an action to quiet title will not lie because that defendant is in possession; (2) that, being in possession as a public service corporation, the only remedy is for damages for the value of the property at the time it was taken; and (3) that the bill fails to disclose that plaintiff is the party entitled to maintain the latter form of action.

It may be remarked preliminarily that, while permissible under the statute of the state, it is not readily to be perceived from the face of the pleading why the two defendants are united in the same action. It will be at once observed that, upon the facts alleged, the case made against one is essentially different in its legal aspects from that against the other, in that, while it is alleged that the defendant Southern Pa-

cific Company is in possession of the premises in dispute, using them for its purposes as a public service corporation, it is alleged that the Central Pacific Railway Company is not in possession, and there is nothing in the bill tending to disclose any privity in estate, right, or claim as between the latter and its codefendant. It is true that, at the argument, the fact was adverted to, and not controverted, that the Southern Pacific Company is holding and operating the railroad tracks and structures occupying the premises as the lessee of its codefendant; and if this fact were alleged the joining of the two would obviously be logical and proper, since the possession of the lessee would be that of the lessor. But the fact is not alleged, and as it is not one of a character, however notorious, of which the court may take judicial cognizance, its existence cannot aid us in solving present questions, which must be determined from a consideration alone of the facts stated in the bill. The motion must accordingly be disposed of upon the assumption that there is no such privity or community of interest between the two defendants.

[1] So far, then, as the case made against the Central Pacific Railway Company is concerned, it may be somewhat briefly disposed of. While it is conceded by plaintiff that, being out of possession, the facts would not, under the general doctrine prevailing in the federal courts as to the requisites of a suit to quiet title, authorize it to there maintain an action of that impression, the theory upon which the bill proceeds as to this defendant is that the facts make a case falling within an exception to the general rule given recognition by the Supreme Court in Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52. That was an action brought in the federal court in Nebraska, under a local statute similar to the Code provision of this state (C. C. P. § 738), authorizing an action in the nature of a suit to quiet title by one holding the legal title to land, whether in or out of possession, to have such title cleared of adverse claims. The bill disclosed that neither the plaintiff nor the defendant was in possession, but that the land was vacant, unoccupied, and unimproved. Against the objection that the action could not be maintained, the Supreme Court held that it could, declaring in substance that, while the state statute enlarged the right ordinarily existing in the federal courts to maintain such a suit, there was nothing in the facts to take the case out of the domain of equity as there administered; that in an instance such as that presented by the bill, where both parties were out of possession, and the land vacant and unoccupied, no relief could be had at law, and as the settlement of such controversies and the improvement of the property resulting therefrom was desirable, as conducive to the best interests of the state, there was no good reason why the federal courts should not entertain the suit and enforce the right given.

But the doctrine applied was confined strictly to instances where, as there, the premises involved were not held in possession adverse to the plaintiff, but were vacant and unoccupied, and where consequently the remedy afforded by the state statute would not trench upon the fundamental distinction controlling these courts as between actions at law and suits in equity; it being made plain that, in any case where

the law will afford a plain, adequate, and complete remedy, equity will not—indeed, may not—take jurisdiction. Thus the court say:

"No adequate relief to the owners of real property against the adverse claims of parties not in possession can be given by a court of law. If the holders of such claims do not seek to enforce them, the party in possession, or entitled to the possession—the actual owner of the fee—is helpless in the matter, unless he can resort to a court of equity. It does not follow that, by allowing in the federal courts a suit for relief under the statute of Nebraska, controversies properly cognizable in a court of law will be drawn into a court of equity. There can be no controversy at law respecting the title to or right of possession of real property when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against a party in possession. Should suit be brought in the federal court, under the Nebraska statute, against a party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law; but that is not this case, nor is it of such cases we are speaking."

And this limitation of the effect of that case is definitely stated by the distinguished author of the opinion, in explaining what is there held, in the later case of Whitehead v. Shattuck, 138 U. S. 146, 155, 11 Sup. Ct. 276, 278 (34 L. Ed. 873) where, after an extended comment upon the character of the former case and the principles there announced, he says:

"All that was thus said was applied simply to the case presented where neither party was in possession of the property. No word was expressed, intimating that suits of the kind could be maintained in the courts of the United States where the plaintiff had a plain, adequate, and complete remedy at law; and such inference was specially guarded against."

A like construction is given the case by Mr. Justice McKenna, then Circuit Judge, in Southern Pacific Co. v. Goodrich (C. C.) 57 Fed. 879, where, commenting upon Holland v. Challen and Whitehead v. Shattuck, he concludes:

"These cases, therefore, must be held to establish that to sustain a suit in equity to quiet title in the federal courts, when the plaintiff is out of possession, the defendant must also be out possession; in other words, *the land must be unoccupied land*."

It is quite apparent that that case can have no application to one like the present, where the disputed premises are not only held in adverse possession, but are fully occupied and improved; and that, too, as we shall presently see, for a purpose which precludes such possession being disturbed.

[2] As to the case of the defendant Southern Pacific Company. Ordinarily, where a defendant has taken possession of real property and is holding adversely to the owner of the legal title, the remedy of the latter is at law, in ejectment, for the possession and damages for the detention, and this constitutes a complete and adequate remedy. Whitehead v. Shattuck, supra. But where the party in possession is holding and using the property in the character and for the purposes of a public utility—a servant of the public—and has established thereon and is operating instrumentalities to that end, then the remedy in ejectment will not lie, by reason of the interest of the

public in having its service uninterrupted. In such a case, if the owner has permitted his land to be taken possession of and devoted to the purposes of a public service without first securing compensation, public policy demands that he be not permitted to oust the holder and retake his land, but that he be relegated to his remedy for the damages suffered through the invasion of his property. Roberts v. Railroad Co., 158 U. S. 10, 15 Sup. Ct. 756, 39 L. Ed. 873; Gurnsey v. No. Cal. Power Co., 160 Cal. 699, 117 Pac. 906, 36 L. R. A. (N. S.) 185; 2 Wood on Railroads, 994; Elliott on Railroads (2d Ed.) § 1000.

Plaintiff recognizes the correctness of these principles in their general application, but his contention is that they do not control in a case where the circumstances are such as that the remedy at law is not full and complete, and this he conceives to be such a case. This is based upon the averment in the bill that the land taken and occupied by this defendant is more than its necessities as a public utility and the service of the public demand; and the contention is that plaintiff may invoke the aid of equity to inquire into the extent to which the land is being necessarily used for that purpose and restore to it such portions of the disputed premises as are not justly required therefor; that, until such determination is had, there is no adequate basis upon which to fix the damages for the land necessarily employed in the service of the public; and that to require plaintiff to resort to an action for damages without such determination would compel the concession that all the land taken and occupied by the defendant is essential for its purposes as such utility.

But this contention involves a misapprehension of the nature of the inquiry tendered by this feature of the bill. A little consideration will show, I think, that the subject presents no real or substantial element of equitable cognizance. This will be perceived more readily by a comparison of the question here presented with that involved in the case of Stuart v. U. P. R. R. Co., 178 Fed. 756, 103 C. C. A. 89, upon which plaintiff relies as presenting a controlling analogy. The bill in that case sought to quiet the plaintiff's title to a tract of 160 acres of land patented to it by the government, across which extends the right of way of the defendant railroad. Except as occupied by the defendant for the purposes of its right of way, the land was not in possession of either party. Plaintiff's bill asserted title to the entire tract, while the answer, not disclaiming as to the larger parcel, set up specifically title in defendant to a strip 400 feet wide over the entire tract as a right of way claimed to have been granted it and its predecessor under the "Pacific Railroad Acts," so called; but the evidence, while disclosing a pronounced dispute as to the extent of the actual occupancy and use of the defendant, showed that it was confined to a width of 100 feet, 50 feet on either side of its track, which was fenced and improved and in the actual possession of defendant at the commencement of the action. The lower court dismissed the bill, on the ground that plaintiff's remedy under the facts was at law for damages and not in equity. The Supreme Court reversed this ruling, and in giving its reasons said:

"It is true, generally speaking, that in the courts of the United States a suit to quiet title cannot be maintained by a complainant who is not in possession against a defendant who is in possession; and this is so because there is a plain, complete, and adequate remedy at law [citations.] But is also is true that in exceptional cases, where there is no such remedy at law, the general rule does not apply. In our opinion this is such a case. What really is the subject of the adverse claims of the parties is a strip 400 feet in width along the appellee's railroad. Part of this is in the actual possession of the appellee, is occupied by permanent and costly railroad structures, and is being used as a right of way for strictly railroad purposes. * * * In addition, there is a pronounced and bona fide dispute as to how much of the tract has been occupied and used as a right of way; the appellants insisting that this occupancy and use have been confined to 25 feet or less on either side of the center line of the railroad, and the appellee insisting that they have extended to 50 feet or more on either side. In these circumstances it is apparent, as we think, that the appellants are entitled to a hearing and decision as to what extent the appellee is entitled to occupy and use the tract as a right of way, that they are not entitled to oust the appellee from its actual possession or to interrupt the operation of its railroad, and that their rights can be completely and adequately determined by a suit in equity in the nature of one to quiet title, but not otherwise. * * * There may be cases in which an action for compensation or damages under the statute would afford a plain, complete, and adequate remedy; but this is not such a case, for, in the absence of a prior determination of the dispute respecting the width of the strip actually occupied and used as a right of way, such an action could not be maintained without either conceding the greater occupancy and use asserted by the appellee or risking a recovery of less than the actual damages. A remedy cannot be regarded as plain, complete, and adequate when to pursue it is to jeopardize a part of what is claimed, irrespective of the merits."

It will thus be seen that the sole ground upon which the case was held a proper one for equity was because of the dispute and uncertainty over the extent of the actual possession of the defendant and the limits of its right of way under the congressional grant—entirely proper subjects for equitable consideration, since, defendant not being in possession of the entire premises, until the extent of its possession was ascertained ejectment would not lie, and until the determination of the limits of its right of way, an action for damages would, for the reasons stated, have been inadequate as a remedy.

It will be readily perceived, however, that the present bill involves no such question as there considered. There is no controversy here over the extent of the defendant's actual possession of the premises in dispute; that is alleged in the bill to extend to the entire parcel. What plaintiff claims, and all that he claims, is that, although defendant is occupying and using the entire premises for its purposes as a common carrier, such occupancy and use are in excess to some extent not alleged of its actual necessities for railroad purposes; and he asks that a court of equity proceed to inquire and determine to what extent, if any, his property has thus been unnecessarily appropriated to a public use—in other words, to investigate and adjudicate as to how far the disputed premises are actually essential to the necessities of the defendant as a public service corporation in carrying on its railroad business, with all its "necessary grounds for stations, buildings, workshops, and depots, machine shops, switches, turntables, and water stations"— for these are all recognized as proper and necessary adjuncts to the business. Stuart v. Union Pac. R. Co., supra, 178 Fed. 758, 103 C. C. A.

89. Such an inquiry, if available to plaintiff in any form (Roberts v. U. P. R. Co., supra, 158 U. S. 12, 15 Sup. Ct. 756, 39 L. Ed. 873), is not and never was a subject of equitable cognizance. Plaintiff's rights as against this defendant are not in any respect different in kind, whatever the difference in form of remedy, than if defendant were seeking to take the property in the first instance for the use to which it is now being put. In such an action, plaintiff would be entitled, under proper measure, to the damages he would suffer from the taking. Such an action would be in form one in eminent domain to condemn the property. That action has never been of equitable cognizance, but is purely one at law. Kohl v. United States, 91 U. S. 367, 376 (23 L. Ed. 449). As there said:

"The right of eminent domain always was a right at common law. It was not a right in equity, nor was it even the creature of a statute. The time of its exercise may have been prescribed by statute; but the right itself was superior to any statute. That it was not enforced through the agency of a jury is immaterial; for many civil as well as criminal proceedings at common law were without a jury. It is difficult, then, to see why a proceeding to take land in virtue of the government's eminent domain, and determining the compensation to be made for it, is not, within the meaning of the statute, a suit at common law, when initiated in a court."

The same is true under the statute of this state; the action is at law, and the parties have a right to have the damages assessed by a jury. The court in such a case must determine whether the use to which it is sought to subject the property is one authorized by law and that the taking is necessary to such use (C. C. P. § 1241), which essentially includes the right to determine to what extent the proposed taking is necessary—the precise question which plaintiff presents by the present bill. The bill merely shows that plaintiff has permitted his property to be taken without first requiring compensation. A public use having intervened for which his property is occupied, he cannot retake it, but must have recourse to his action for damages. Such an action is in legal effect the counterpart or complement of the action to condemn. It proceeds upon the theory of an implied contract by defendant to pay for the land taken, or for damages for its taking, but in either form it is in its essential nature an action at law, pure and simple; and with complete jurisdiction in the court to determine the question of necessary extent of use, if, as suggested, that question is now open to plaintiff's challenge.

[3] This conclusion would send the case as to this defendant to the law side of the court, but for one obstacle. There is no averment in the bill as to the date of defendant's taking of the land, nor as to who was the owner of the legal title at the time of such taking. It is settled that the right of action for damages in such an instance is in the party holding the title at the time of the original wrongful entry. Roberts v. No. Pac. R. R., supra; Stone v. Waukegan, 205 Fed. 495, 123 C. C. A. 563; Kindred v. U. P. R. R. Co., 225 U. S. 582, 32 Sup. Ct. 780, 56 L. Ed. 1216.

There is, therefore, a failure to state any cause of action in favor of the present plaintiff. This being so, in view of what has been said, the bill must be dismissed as to both defendants. A like order will be entered in each of the cases, the numbers of which are above given.