[L. A. No. 4066.   Department Two.—January 30, 1918.]

## SOUTHERN PACIFIC COMPANY (a Corporation), Respondent, v. LOS ANGELES MILLING COMPANY (a Corporation), Appellant.

RAILROADS — EASEMENT FOR SPUR-TRACK — PUBLIC USE.—Where, in an action by a railroad corporation against a milling company, to enjoin the latter from destroying a portion of a spur-track traversing its premises, and which also traverses premises occupied by various industrial concerns, and also crosses a public street or streets, the trial court, against the contention of the defendant and cross-complainant that the spur-track had been devoted, not to public, but to private,· use, finds that the spur-track "has been and is now devoted and dedicated to public use," the circumstances that the right of way is carefully fenced, that doors and gates opening from the right of way into the premises of the various industrial concerns are locked against the general public, and that where the track leaves private property to cross the street, gates are maintained against the openings to exclude the general public, do not prevail against the finding of a public use, since it is not shown that any one of the establishments along the line of the spur-track is denied the service of the railroad when requiring cars and equipment for shipment or receipt of commodities, and the fact that the track is well fenced and provided with elaborate safeguards tends merely to show a due regard to the salutary requirement of "Safety First!"

ID.—SPUR-TRACK—PUBLIC USE.—Where a spur-track had for twenty years served as an adjunct to the railroad of a railroad corporation, many concerns sending and receiving shipments of freight to and from it, the purpose to which the track had been devoted for such a time was a public use, for which, if there were no track in place, the railroad corporation might proceed by an action in condemnation to acquire such a branch.

ID.—GRANT OF PROPERTY—LESSEE OF GRANTOR NOT ESTOPPED FROM CLAIMING EASEMENT.—The mere fact that a railroad corporation's lessor conveyed land by warranty deed does not estop such corporation from afterward claiming an easement for maintaining a spur-track thereon, where the track was in existence and its use obvious at the time of the conveyance, and service was continued thereon without interruption for many years thereafter.

ID.—EASEMENT—ESTOPPEL OF OWNER OF PROPERTY TO DENY—FINDING SUSTAINED BY EVIDENCE.—In an action by a railroad company to enjoin a milling company from destroying a spur-track of the railroad company running into the lands of the milling

company over other lands, including lands occupied by a warehouse company, a finding that the milling company was estopped to deny the right of the railroad corporation to use the spurtrack was sustained by evidence that prior to the purchase of the warehouse company's property, the president of the milling company's predecessor was informed of the intended purchase and of the intention to expend approximately two hundred thousand dollars in the construction of a warehouse, and relying on the assurance of the milling company's president that the milling company would not molest or interfere with the use of the track, which was then in existence, the warehouse company built the warehouse at great expense and continued to make substantial outlays in conducting its business, and the milling company and its predecessor, the warehouse company, knowing all the facts and the necessity of the spur-track to the conduct of the railroad's business as a common carrier, failed for twenty years to object to the use of the track.

ID.—PERMISSIVE USE—PRESUMPTION OF AUTHORITY OF OFFICER OF CORPORATION TO GRANT PERMISSION.—Where the unmolested use by a railroad corporation of a spur-track over the property of another corporation was obvious to all, and such use was due at all to permission granted by the president of the latter corporation, the presumption arises that he acted upon authority.

ID.—EASEMENT FOR SPUR-TRACK—ESTOPPEL TO DENY RIGHT—FINDING SUSTAINED BY EVIDENCE.—A finding of estoppel of a milling company to deny the right of a railroad corporation to continue the use of a spur-track over the milling company's property found to be abundantly supported by reason of long acquiescence of the milling company and its predecessor in the operation of the spur-track.

ID.—TRESPASS AFTER CONVEYANCE WITH WARRANTY — STATUTE OF LIMITATIONS.—A railroad corporation having conveyed with covenant of warranty, land across which it had a spur-track which it continued to use thereafter, any action for damages for trespass, based on the use of such track thereafter, was barred in three years from the date of the conveyance, under subdivision 2 of section 338 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of the County of Los Angeles.   Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

W. G. Van Pelt, and E. S. Williams, for Appellant.

J. W. McKinley, Frank Karr, W. R. Millar, and W. I. Gilbert, for Respondent.

MELVIN, J.—The defendant, Los Angeles Milling Company, having threatened to destroy that portion of a certain spur-track which traversed its premises, suit for an injunction was instituted by Southern Pacific Company. Defendant answered and filed a cross-complaint by which Southern Pacific Railroad Company, the lessor of the plaintiff, was brought in, and after issues joined upon answers to that pleading the cause was heard with the result that an injunction was granted restraining Los Angeles Milling Company from tearing up the track or obstructing the use thereof.

Prior to April 24, 1878, the Southern Pacific Railroad Company owned the land now occupied by appellant, which is situated in the city of Los Angeles between Market and Commercial Streets and fronting on Alameda Street. At that time there was a spur-track which joined the main line on Alameda Street at a point about half way between Jackson and Market Streets. This spur-track extended in a northwesterly direction across private property on the southwest corner of Market and Alameda Streets, thence, after crossing Market Street diagonally over the southwest corner of the property now owned by appellant and on into that now owned and occupied by the Los Angeles Warehouse Company, to a point near Commercial Street, and thence by a switch-back to a point on that property at the north side of Market Street. Later, this branch was extended southerly across Market Street to the property between Market and Jackson Streets now owned and occupied by the Los Angeles Warehouse Company, and occupied also by certain industrial concerns, to a terminus on the property of Nelson-Morris & Company. The entire spur-track is about 1,575 feet in length. In 1878, W. H. Perry owned the land now occupied by the Los Angeles Warehouse Company, and that now occupied by John A. Roeblings and Sons Company at the southwest corner of Alameda and Market Streets. He conducted lumber-yards on these two pieces of land. Later, he owned and occupied with his pine lumber-yard the property on the south side of Market Street now occupied by the Western Commercial Company. It was at that time that the switch-back was extended southerly across Market Street.

On April 24, 1878, the Southern Pacific Railroad Company deeded the property now owned by appellant to Isaac Lankershim, the deed containing a covenant of warranty particularly

against a certain deed of trust, promising to repay the grantee, his heirs, or assigns seventeen thousand five hundred dollars in gold coin in case of eviction by anyone claiming under the said deed of trust. Thereafter, service on the spur-track was continued without interruption. Lankershim conveyed to the Los Angeles Farming and Milling Company, and by mesne conveyances appellant has succeeded in title to that property. Warehouses and other buildings of very great value have been erected by the different industries which have developed on the land served by the spur-track, and the Southern Pacific Railroad Company or its successor, the Southern Pacific Company, has operated its cars on the spur-track as convenience required without interruption until, in 1911, the Railroad Company was ordered to remove its tracks from defendant's land. All of these facts appear without contradiction, from the testimony adduced at the trial.

Respondent also introduced testimony tending to prove not only the hauling of materials and products to and from the manufacturing plants adjacent to the spur-track, but also the transportation to and from the public warehouse of the Los Angeles Warehouse Company, from points both within and without the state of California, of goods and wares of many kinds, the outgoing cargoes consigned to various persons in many places—the incoming generally delivered for storage and subsequent distribution.

The complaint was founded upon the theory that the spur-track had been devoted to a public use, and also that defendant was estopped to deny plaintiff's right to maintain the track by reason of said defendant's conduct in favor of plaintiff and in favor of the Los Angeles Warehouse Company.

The court found that the spur-track for many years, last past, "has served as an adjunct and appendage to the railroad of plaintiff, many persons, firms, and corporations engaged in receiving and sending shipments of freight, to and from the industries owned and operated by said persons, located on and adjacent to the spur-track"; that it serves and has served, as an adjunct of the said railroad certain named firms; that "said Los Angeles Warehouse Company receives goods on storage from any and all persons having goods to store, and ships the same to points both inside and outside of the state of California, over said spur-track and in cars placed on said spur-track by plaintiff for the purpose of delivering freight

to said warehouse company and its patrons, and for the purpose of receiving freight from said warehouse company and its patrons''; and that the spur-track "has been and is now devoted and dedicated to public use, and plaintiff has at all times carried, and will hereafter continue to carry all sorts of goods and freight for all purposes as a common carrier and deliver them to such persons as the consignors may designate, and carry and deliver them to the Los Angeles Warehouse Company, over and by means of said spur-track, for the purpose of distribution to the general public.''

It was also found that in 1906, just prior to the purchase by the corporation of the property now occupied by the Los Angeles Warehouse Company, O. B. Fuller and George Safford, two officers of said corporation, called upon I. N. Van Nuys, then president of appellant's predecessor in interest, and told him that their company was about to expend approximately two hundred thousand dollars in the construction of a warehouse on the land, and that they desired to know whether or not any difficulty would arise from the use by their corporation of the said spur-track as an adjunct to their business, and whether or not the Los Angeles Farming and Milling Company would at any time in the future object to their use of the track, or seek to curtail or prevent enjoyment thereof by the Warehouse Company; and that thereupon Mr. Van Nuys assured them that they would not at any time in the future be molested in such use and enjoyment of the spur-track. It was found further that, relying upon this assurance, the Los Angeles Warehouse Company expended large sums of money in building the warehouse, and that it has continued to make substantial outlays in the conduct of its business. There were elaborate findings to the effect that by failing for more than twenty years to object to the use of the track, defendant and its predecessors (being fully aware of all of the facts and the necessity of such spur-track to the conduct of plaintiff's business as a common carrier) were estopped to deny the right of plaintiff to continue such use of the track.

Appellant contends that the spur-track has been devoted not to public but to private use; that the estoppel found was not justified by the evidence; and that the court's failure to take testimony regarding and to award damages for the use of its property amounted to condemnation of land without recom-

pense.   In support of the first position assumed in argument
by appellant, counsel call our attention to the fact that the
right of way is carefully fenced; that doors and gates open-
ing from the right of way into the premises of the various
industrial concerns along the spur-track are locked against
the general public, and that where the track leaves private
property to cross the street gates are maintained across the
openings to exclude the general public.   All of these circum-
stances do not prevail against the finding of a public use, for
it is not shown that any one of the establishments along the
line of the spur-track is denied the service of the plaintiff
whenever it requires cars and equipment for facilitating ship-
ment or receipt of commodities.   That the track is well fenced
and provided with elaborate safeguards tends merely to show
that these establishments pay due regard to the very salutary
slogan of modern railroading and manufacturing, "Safety
First!"

Respondent is of the opinion that under section 1001 and
subdivision 7 of section 465 of the Civil Code, the purpose to
which this spur-track has been devoted for more than two
decades is a public use for which, if there were no track in
place, it might proceed by an action in condemnation to ac-
quire land for such a branch.   This position is, we think, well
taken.   A very illuminating authority upon this subject is
*Madera Ry. Co.* v. *Raymond Granite Co.,* 3 Cal. App. 668,
[87 Pac. 27], a cause in which this court denied a petition for
transfer.   That was a condemnation suit, and defendants re-
sisted the proposed taking of their land upon the ground
that the use was in reality a private one, the road being de-
signed only to serve plaintiff's *alter ego* the Madera Granite
Company.   Mr. Presiding Justice Chipman, in the course of
the opinion of the court prepared by him, used the following
language:

"There was considerable evidence tending to the point that
the main object in building the road was to enable the owners
of the Madera Granite Company to market its product.   Cir-
cumstances may arise where it becomes of public benefit for
branch railroads to be built primarily to reach some important
industry about to be inaugurated, or that is struggling along
under difficulties for want of transportation facilities.   The
fact that the advantage of such road inures to a particular
individual or a class of individuals will not render the use

any the less public. And the fact that the stockholders of the Madera Granite Company were also stockholders of plaintiff company does not prove that the contemplated use is a private use. (*Lindsay I. Co.* v. *Mehrtens,* 97 Cal. 676, [32 Pac. 802].)'' Appellant calls attention to the fact that in the case just cited the railroad traversed a public highway, and that the general public would, therefore, have access to it virtually throughout its entire extent. But in the case at bar the track crosses public streets and might be used if needed by the general public. It appears that the railroad possesses excellent terminal facilities, and our attention is called to no proof that any goods have been shipped from or received upon the public streets, but this is not controlling. The fact remains that none of that part of the public whose establishments are conveniently served by the spur-track, and no customer consigning goods to the public warehouse for storage or shipment, has been denied the use of this branch of plaintiff's track. It would not illuminate, but would merely lengthen, this discussion to attempt ̄ analyses of the many authorities cited in the able briefs in this case. Counsel seem to be agreed that each case must be tested with reference to its peculiar facts. There is no testimony to the effect that anyone who had lawful occasion to use the spur-track had ever been unable to do so. The testimony tended to show that the spur-track has been used in common by all of the establishments conveniently located for such use.

The following language from the opinion in *Madera Ry. Co.* v. *Raymond Granite Co., supra,* expresses the true rule: ''The public use required need not be of the whole state or any considerable portion of it, but the use and benefit must be in common, not to particular individuals. Every public use is in more or less degree local, and benefits a particular section more than others. This is true of railroads, as well as of ordinary highways. The cases are numerous sustaining this rule. (See notes to Lewis on Eminent Domain, 161. See, also, *Lindsay I. Co.* v. *Mehrtens,* 97 Cal. 676, [32 Pac. 802].)''

Respondents deny that they seek to uphold their use of the right of way by prescriptive title. There is no finding of such title. They do contend, however, that if it be said that in violation of the warranty contained in the deed of grant they or either of them evicted appellant or its predecessor from the strip occupied by the track, such eviction took place

in 1878, or, at any rate, so long ago that the statute of limitations, which they pleaded, was entirely available. The deed to Lankershim is set forth in the cross-complaint of appellant as the basis of an alleged estoppel of either respondent to claim any title or interest in the right to maintain the spurtrack on the land of the Los Angeles Milling Company. Some of the defenses to this cross-complaint were based upon sections 318 and 343 of the Code of Civil Procedure, and the court found in favor of respondent on those statutes. This was proper. The mere fact that appellant's predecessor was the grantee of one of the respondents under a warranty deed does not prevent an assertion by plaintiff of a right to use the track. Where the owner of one tract of land sells part of it, and that part is burdened by an obvious easement in favor of other persons, or other parts of the larger tract, an implied understanding arises that the burdens and correlative advantages shall continue as they existed before the separation of the title. (*Cheda* v. *Bodkin,* 173 Cal. 7–14, [158 Pac. 1025]; *Goodman* v. *Heilig,* 157 N. C. 6, [36 L. R. A. (N. S.) 1004, 72 S. E. 866]; *Geren* v. *Caldarera,* 99 Ark. 260, [138 S. W. 335].)

The finding of estoppel arising out of promises made by the president of appellant's predecessor to representatives of the Los Angeles Warehouse Company is attacked on several grounds, one being the alleged inherent weakness and improbability of the testimony given in its support. It is true that Mr. Van Nuys, who was the person said to have made the promise, was dead before the trial of this case, but the credibility of the witness who related the conversation with him was a matter peculiarly within the determination and discretion of the trial court. There is nothing inherently improbable in the story as told by the witness. Indeed, it would be strange if the Warehouse Company would spend two hundred thousand dollars to erect a building on the property without having some understanding with its neighbor such as that described in the testimony. But appellant denies the right of a president so to bind his corporation. In cases of this sort where the unmolested use of the property is obvious to all, and such use was due at all to the permission granted by the president, the presumption arises that he acted upon authority. (*Fresno Street R. R. Co.* v. *Southern Pacific R. R. Co.,* 135 Cal. 202–208, [67 Pac. 773]; *Katz* v. *Walkin-*

*shaw*, 141 Cal. 116–136, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766].)   There is more force in the contention that appellant was not shown to be in privity with its grantor in the matter of the consent to respondent's use of the property on behalf of the Warehouse Company, one of the railroad company's patrons.   It would seem, however, that an intending purchaser, seeing the valuable improvements on neighboring land, and observing that said property was served by a track passing through the premises offered for sale, would buy at its peril if it should fail to inquire by what authority the spur-track was maintained.   The matter of the estoppel against the appellant by reason of its promises to the Warehouse Company is comparatively unimportant, however, as there was abundant support of the finding that it was estopped to deny the right of plaintiff to continue the use of the spur-track, by reason of long acquiescence of the said Los Angeles Milling Company and its predecessor in such operation.   (*Fresno Street R. R. Co.* v. *Southern Pacific R. R. Co., supra; Katz* v. *Walkinshaw, supra; Hartley* v. *Vermillion*, 141 Cal. 339, [74 Pac, 987] ; *Crescent Canal Co.* v. *Montgomery*, 143 Cal. 248, [65 L. R. A. 940, 76 Pac. 1032] ; *Leverone* v. *Weakley*, 155 Cal. 395–400, [101 Pac. 304] ; *Schwerdtle* v. *County of Placer*, 108 Cal. 589, [41 Pac. 448].)   In *Gurnsey* v. *Northern California Power Co.*, 160 Cal. 699, [36 L. R. A. (N. S.) 185, 117 Pac. 906], it was held that an owner who has long acquiesced in the use of his land by a public service corporation may not maintain ejectment against such corporation because the rights and interests of the public attach to the use.   And in that case it is also held that while under the constitution private property may not be taken for public use without compensation first paid, this condition is solely for the benefit of the land owner, and may be either enforced or waived at his pleasure.

Under the authority of the case last cited it is clear that any claim for damages which may have existed in favor of appellant has been waived.   Any action for damages for trespass was barred within three years after the deed to Lankershim, under subdivision 2 of section 338 of the Code of Civil Procedure.   The action for damages must be commenced within the statutory period after the original infliction of the injury.   (*Williams* v. *Southern Pacific R. R. Co.*, 150 Cal. 624, [89 Pac. 599].)

This cannot be regarded as an action in condemnation under the guise of a proceeding to obtain an injunction. It was a proceeding by which plaintiff sought to maintain a status in which appellant and its predecessors had acquiesced for many years.

The judgment is affirmed.

Wilbur, J., and Victor E. Shaw, J., *pro tem.*, concurred.

Hearing in Bank denied.