[Civ. No. 2881.   Third Appellate District.—April 17, 1925.]

W. P. STONE, Respondent, v. CORDUA IRRIGATION DISTRICT (a Corporation), Appellant.

[1] CONSTITUTIONAL LAW—CONSTRUCTION OF DRAINAGE DITCH WITHOUT OWNER'S KNOWLEDGE OR CONSENT—DAMAGES—PUBLIC POLICY. An owner through whose land a drainage ditch has been constructed by an irrigation district without his knowledge or consent and put to a public use is not required by public policy to submit to the abridgment of his constitutional right to have just compensation made or paid into court before his land was taken, where the irrigation district may bring an action to condemn a right of way through the owner's land and take immediate possession thereof, without any substantial interference with the public service in which it is engaged; and the owner's right to recover damages for the wrongful taking of his property is less

valuable than his constitutional right to have compensation therefor first paid into court.

[2] ID.—CONSTITUTIONAL RIGHT—PUBLIC. POLICY.—The constitutional rights of a citizen ought not to be abridged on the ground of public policy unless the welfare of the public is really and substantially involved.

[3] INJUNCTION—DAMAGES—CONSTRUCTION OF DRAINAGE DITCH—ABSENCE OF KNOWLEDGE OR CONSENT OF OWNER—JUDGMENTS.—In this action for damages and to enjoin an irrigation district from using a drainage ditch, part of which was constructed on plaintiff's land without his knowledge or consent, the injunction granted by the trial court should have gone no further than to restrain the defendant from using that part of the drainage ditch which was upon plaintiff's land.

(1) 29 **C. J.,** p. 835, n. 56.    (2) 12 **C. J.,** p. 935, n. 60.    (3) 32 **C. J.,** p. 373, n. 3.

APPEAL from a judgment of the Superior Court of Yuba County. Ernest Weyand, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin for Appellant.

Crofton & Wetmore and Frank A. Duryea for Respondent.

FINCH, P. J.—The plaintiff owns the southwest quarter of section 29, township 16 north, range 4 east, in Yuba County, the land being outside the boundary lines of the defendant district. The defendant is an irrigation district organized under the California Irrigation District Act. (Stats. 1897, p. 254, and amendments thereto.) Within the district, in section 19 and the sections northerly thereof, rice is raised on seven hundred acres of land for the irrigation of which water is furnished by defendant. The Southern Pacific Railroad runs in a northeasterly direction and touches the southeast corner of section 19. The natural drainage of the seven hundred acres of rice land and certain other lands in the district is in a southwesterly direction through a slough which is west of the railroad. Nigger Jack slough runs in a southwesterly direction in a course nearly parallel with and approximately a quarter of a mile

east of the railroad. It enters plaintiff's land near the middle of the north boundary thereof and a short distance southwesterly from the point of entrance it divides into two branches, the east branch crossing plaintiff's south boundary and the west branch running westerly to a point near the west boundary and thence southerly to about the middle of the west boundary, where it turns again and crosses the west boundary in a southwesterly direction. The two branches unite again below plaintiff's land. His land was leased to tenants and he resided in the city of Oakland, California.

The defendant endeavored to obtain a right of way for a drainage ditch through lands lying south of section 19, but failing to reach an agreement with the owners of such lands it was determined to construct a drainage ditch along the south boundary line of section 19 to the southeast corner of that section and thence south to Nigger Jack slough. It caused a letter to be mailed to the plaintiff, addressed to Oakland, requesting a right of way through his land, but for some reason it was not delivered to him and was later returned to defendant. In the month of May, 1920, the defendant constructed the proposed drainage ditch, referred to in the judgment as a "drag-line" ditch along the south boundary line of section 19 and through the embankment of the railroad, thence south to the northwest corner of the plaintiff's land, and thence, without plaintiff's knowledge or consent, in a southeasterly direction through his land for a distance of about five hundred feet to the west branch of Nigger Jack slough. The ditch through plaintiff's land was excavated to a depth of several feet and to a width of about eight feet on the bottom. It followed the course of a smaller ditch which theretofore had drained a county road. During the irrigating seasons of 1920 and 1921 such quantities of water were turned into the ditch as to cause the slough to overflow and damage the crops growing on plaintiff's land. It does not appear when the plaintiff first learned that the ditch had been constructed through his land. It appears, however, that in December, 1921, the plaintiff and the officers of the defendant discussed the question of damages to the land from the overflow and the matter of securing a right of way through it for drainage purposes. The record does not show when this action was commenced, but the amended complaint was filed July 10, 1922.

The judgment awards plaintiff damages for the flooding of his land and enjoins defendant from discharging "any foreign waters" into Nigger Jack slough "so as to cause said Nigger Jack slough or any of its branches, at or on plaintiff's land to overflow any of the natural and unleveed banks thereof." The defendant has not appealed from the foregoing parts of the judgment, but has appealed from the following provisions thereof:

"It is further ordered, adjudged and decreed that the defendant do within thirty days after date of service of a certified copy hereof upon said defendant, effectually and permanently close up that certain opening or siphon constructed by defendant in 1920 through the embankment of the Southern Pacific Railroad, which said opening is a part of the drag-line ditch excavated by defendant along the south line of section 19 . . . to and under said railroad and thence easterly and southerly to the lands of plaintiff hereinafter described, so that no drainage, seepage or overflow waters shall thereafter be permitted or allowed to flow from the lands west of said railroad through said opening and drag-line ditch to the lands east of said railroad, and so that no drainage, seepage or overflow waters shall thereafter be permitted or allowed to flow from the lands east of said railroad into and through said drag-line ditch to and upon the lands of plaintiff hereinafter described.

"It is further ordered, adjudged and decreed that said defendant, its agents, attorneys, servants and employees and any and all other persons acting in behalf or aid of said defendant be and they are and each of them is permanently and forever restrained and enjoined from bringing any drainage, seepage or overflow waters through or under the embankment of the Southern Pacific Railroad and down the drag-line ditch herein referred to and into Nigger Jack slough or on the lands of the plaintiff hereinafter described."

Appellant contends that respondent "did not prevent the work from being done," and that, therefore, after the completion of the drainage ditch and its use for the public benefit, "injunction will not be permitted, but respondent will be relegated to his action for damages," citing *Crescent Canal Co.* v. *Montgomery*, 143 Cal. 248 [65 L. R. A. 940, 76 Pac. 1032], *Fresno etc. Co.* v. *Southern Pac. etc. Co.*, 135 Cal. 202 [67 Pac. 773], *Southern Cal. Ry. Co.* v. *Slauson*,

138 Cal. 342 [94 Am. St. Rep. 58, 71 Pac. 352], *Barton* v. *Riverside Water Co.*, 155 Cal. 509 [23 L. R. A. (N. S.) 331, 101 Pac. 790]), and *Southern Pac. Co.* v. *Los Angeles Mill Co.*, 177 Cal. 395 [170 Pac. 829]. In *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699, 711 [36 L. R. A. (N. S.) 185, 117 Pac. 906], it is said: "The constitution provides that private property may not be taken for public use unless compensation is first paid to the owner. But this condition of compensation to be first paid is solely for the benefit of the owner of the land and, like any other personal right, may be insisted on by him, or waived at his pleasure. He might, when the defendant corporation commenced the construction of its electric power system over his land, have stood upon his constitutional rights and enjoined its entry until he had been first paid for it, or he could have permitted the defendant to enter thereon and perfect the construction of its system for the public benefit. But when he has thus permitted by inaction expenditures to be made and public interests to intervene, he will be deemed to have waived all other remedies which he might have invoked save that of an action for compensation. This rule is not based so much upon the application of the doctrine of estoppel, . . . so that all remedies save one for compensation will be denied him. It is based mainly on the great principle of public policy under which the rights of the citizen are sometimes abridged in the interest of the public welfare. It is applied in a case such as this, when the plaintiff has stood by, without asserting a right which he might have invoked, until the corporation charged with a service, public in its nature, has completed its electric line over his land, and is actually engaged in discharging a public duty, advantageous and important alike to the social and business interests of the community." In all the foregoing cases the owners had knowingly stood by while expenditures were being made and their lands appropriated to public uses. The inference from the evidence in the instant case is not that the plaintiff knowingly stood by and permitted the construction of the ditch through his land, but that he had no knowledge thereof until after the ditch was completed. [1] The question then is whether, in a case such as this, an owner through whose land a ditch has been constructed without his knowledge or consent and put to a public use is to be relegated to an action for dam-

ages. It has been said that under such circumstances the land owner may be precluded from maintaining an action of ejectment. (Jones on Telegraph and Telephone Companies, 2d ed., sec. 53.) In Lewis on Eminent Domain, third edition, section 929, it is said: "Where works have been constructed and are in use, the public interest is sometimes urged as a reason why ejectment should not be sustained. But the individual cannot be deprived of his property for the public convenience, and in any case execution can be stayed to enable the defendant to condemn." In *Winslow* v. *Baltimore & Ohio R. Co.*, 188 U. S. 646 [47 L. Ed. 635, 23 Sup. Ct. Rep. 443, see, also, Rose's U. S. Notes], the company had maintained and operated a railroad, performing a public service, over a right of way held by the company from testamentary trustees who had control of the land. After the expiration of the lease the trustees refused to renew it and a few years later commenced an action at law to recover possession of the land. The company then brought suit to enjoin the trustees from further prosecuting the action brought by them. A temporary injunction was issued but was dissolved and the action dismissed. The supreme court said: "The court ought to keep in force for a reasonable time, say six months, that portion of the injunction prohibiting the trustees from continuing their proceeding to dispossess the company from the land, in order to enable it to condemn such land in proper proceedings for that purpose, which cannot be taken in the present suit. If more time is needed, the trial court may, upon application, after notice, extend the time as to it may seem reasonably necessary. If no proceedings to condemn are taken within six months from the issuing of the mandate from this court to the court below, then the injunction should be wholly dissolved."

The only ground that can be urged in support of appellant's contention, there being no estoppel against or waiver by respondent, is that of public policy. [2] But the constitutional rights of a citizen ought not to be abridged on the ground of public policy unless the welfare of the public is really and substantially involved. The rule of law announced in *Baltimore & Ohio Southwestern Ry. Co.* v. *Voigt*, 176 U. S. 498 [44 L. Ed. 560, 20 Sup. Ct. Rep. 385, see, also, Rose's U. S. Notes], is applicable in principle to the

facts of this case. It is there said: "It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare." Article I, section 14, of the constitution provides: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner; . . . provided, that in an action in eminent domain brought by the state, or a county, or a municipal corporation, or a drainage, irrigation, levee, or reclamation district, the aforesaid state or political subdivision thereof or district may take immediate possession and use of any right of way required for a public use whether the fee thereof or an easement therefor be sought upon first commencing eminent domain proceedings according to law in a court of competent jurisdiction and thereupon giving such security in the way of money deposits as the court in which such proceedings are pending may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner of the property sought to be taken immediate payment of just compensation for such taking and any damage incident thereto." It has been held that the foregoing provision authorizing the taking of immediate possession is not in conflict with the federal constitution. (*Marblehead Land Co.* v. *Superior Court*, 62 Cal. App. 408 [217 Pac. 536]. See, also, *Los Angeles County* v. *Rindge*, 69 Cal. App. 72 [230 Pac. 468]; *Crozier* v. *Fried. Krupp Aktiengesellschaft*, 224 U. S. 290 [56 L. Ed. 771, 32 Sup. Ct. Rep. 488, see, also, Rose's U. S. Notes]; *Adirondack Ry. Co.* v. *People of the State of New York*, 176 U. S. 335 [44 L. Ed. 492, 20 Sup. Ct. Rep. 460]; *Sweet* v. *Rechel*, 159 U. S. 380 [40 L. Ed. 188, 16 Sup. Ct. Rep. 43].) An action in eminent domain is "commenced by filing a complaint and issuing a summons." (Code Civ. Proc., sec. 1243.) It thus appears that the defendant may bring an action to condemn a right of way through the plaintiff's land and take immediate possession thereof, without any substantial interference with

the public service in which it is engaged. Under such circumstances public policy does not require the plaintiff to submit to the abridgment of his constitutional right to have just compensation made or paid into court before his land is taken. For obvious reasons, his right to recover damages for the wrongful taking of his property is less valuable than his constitutional right to have compensation therefor first paid into court.

[3] The injunction, however, is too broad in its terms. It enjoins the defendant from taking water through the embankment of the railroad and thence down the drag-line ditch to Nigger Jack slough. This ditch, without going through the plaintiff's land, could be extended southerly to the west branch of the slough through the lands of other owners lying farther west. Also, the defendant may condemn a right of way through the plaintiff's land. In either event it would have the right, as against plaintiff, to discharge drainage water through the opening in the railroad embankment and down the drag-line ditch. The injunction should have gone no further than to restrain the defendant from using that part of the drainage ditch which is upon plaintiff's land. That part of the judgment from which no appeal has been taken restrains the defendant from causing water to overflow upon plaintiff's land. No damage, therefore, to crops growing upon the land will result from the use of the drainage ditch through the land for such length of time as may be reasonably necessary to enable the defendant to acquire a right of way by condemnation.

The judgment is modified by striking therefrom the parts from which the defendant has appealed except the description of plaintiff's land contained therein, and inserting in lieu thereof the following: ''It is further ordered, adjudged and decreed that said defendant, its agents, attorneys, servants and employees and any and all other persons acting in behalf or aid of said defendant be and they are and each of them is permanently and forever restrained and enjoined from discharging, or causing to flow, any drainage, seepage or overflow waters into or through that part of defendant's drainage ditch which is upon plaintiff's land, at any time later than sixty days after this judgment shall become final; provided, that nothing herein contained shall preclude the defendant from at any time prosecuting an action to con-

demn a right of way through plaintiff's land for a drainage ditch.''

As so modified the judgment is affirmed, the respondent to recover his costs on appeal.

Plummer, J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 15, 1925.

All the Justices concurred.