[Civ. No. 8511.   Fourth Dist., Div. One.   July 28, 1967.]

J.  B.  SLEMONS  et  al.,  Plaintiffs  and  Respondents,  v. SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Appellant.

Rutan & Tucker, Milford W. Dahl, Rollin E. Woodbury, Harry W. Sturges, Jr. and Tom P. Gilfoy for Defendant and Appellant.

Mize, Larsh, Mize, Hubbard & Baxter and Royal E. Hubbard for Plaintiffs and Respondents.

LAZAR, J. pro tem.*—Plaintiffs-respondents, as owners of a parcel of real property in the City of Santa Ana, filed a complaint to quiet title as against defendant-appellant and to compel the latter to remove from the property a series of three utility poles supporting wires for the transmission of electrical energy. The trial court rendered judgment confirming plaintiffs' ownership of the land and requiring removal of the poles, wires and incidental equipment by defendant.

No substantial differences exist with respect to the basic facts. At a time when the plaintiffs' property was part of a larger tract, defendant placed its poles and wires on the subject property in order to supply electrical energy to the then owner's pumphouse. The installation was made more than 21 years before the case at bar was commenced. No evidence was produced or apparently available to establish the basis upon which the poles and power lines were installed.

In 1953, before ownership of the tract was divided, the line was modified by the replacement and relocation of poles, increase in power capacity and provision for three service

---

*Assigned by the Chairman of the Judicial Council.

outlets to tenants on the land. No evidence was produced concerning the terms, if any, under which the modification was made.

In 1965 plaintiffs purchased the parcel involved in this litigation. The poles and lines were apparent and were observed by plaintiffs before the purchase was made. The plaintiffs noted no mention of a recorded easement in their title policy before completing the purchase but made no inquiry of anyone concerning the status of the poles and power lines. After taking possession of the premises, which were unimproved, plaintiffs demanded of defendant that the poles and lines be removed. Defendant countered with a demand for payment of $1,640 as relocation cost and otherwise a refusal to comply with plaintiffs' demand. The filing of the complaint followed.

The findings of fact, in summary, are: Plaintiffs' ownership of the subject land; the installation of the poles and lines by defendant; the non-existence of a "conveyance" granting an easement; that defendant's use and occupancy was not hostile or adverse; that defendant's occupation and use was with the permission of plaintiffs' predecessor in interest; that plaintiffs revoked the permission in 1965, before filing the action; that defendant refused to remove its poles and lines in response to plaintiffs' demand; that the poles and lines have impaired and interfered with plaintiffs' use of their premises and the premises have been rendered unsightly; that defendant's use and occupation of plaintiffs' premises will become a prescriptive right unless the poles and lines are removed; that actual damages are not practical to determine; "that defendant is a public service company engaged in the business of providing the public with electric service in the Southern California area, including the area where plaintiffs' property is located" and that the poles and lines in litigation have been devoted to a public use; that plaintiffs' rights are not barred by section 338, Code of Civil Procedure.

Four grounds are specified by defendant in contending that plaintiffs are not entitled to the mandatory injunction granted by the judgment. They are stated as: "1. The pole line is devoted to a public use and the public interest has intervened;

"2. Plaintiffs' right to relief is barred by the Statute of Limitations;

"3. An irrevocable license has been created in favor of defendant;

"4. An easement by prescription has been acquired by defendant."

Many cases announce and confirm the doctrine that the intervention of a public use notwithstanding a trespass by a public service entity generally will preclude the award of injunctive relief. (*Loma Portal Civic Club* v. *American Airlines, Inc.*, 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548] ; *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699 [117 P. 906, 36 L.R.A. N.S. 185].) Where the property owner has notice of the wrongful entry and allows improvements to be installed by the public service entity without objection, the property owner will be relegated to his action for damages (*Frustuck* v. *City of Fairfax*, 212 Cal.App.2d 345, 371 [28 Cal.Rptr. 357] ; *Conaway* v. *Yolo Water & Power Co.*, 204 Cal. 125, 131 [266 P. 944, 58 A.L.R. 674] et seq; *Gurnsey* v. *Northern Cal. Power Co., supra*). We are not aware of any reason why the rule should be different where the original entry is by permission of the landowner in the absence of an express contractual arrangement otherwise. The plaintiffs had actual knowledge of the poles, lines and incidental installation items before and at the time of acquisition of the property and thus were not innocent purchasers for value. (*Cf., Pettis* v. *General Tel. Co. of Cal.*, 66 Cal.2d 503, 506-507 [58 Cal.Rptr. 316, 426 P.2d 884].)

We conclude that the injunctive remedy is unavailable to plaintiffs unless plaintiffs' contention is correct that the finding of public use may be challenged upon the ground the evidence fails to show a substantial public use.

The evidence discloses three poles on the easterly 47 feet of plaintiffs' property. Two of the poles are 14.4 feet apart being the base of an "L" and the third is 120.54 feet from the pole at the base of the long leg of the "L." The transmission lines carried by this pole serve three users one of whom is the plaintiffs herein. The plaintiffs' property is bounded on the west and north by public streets. Power poles other than those involved in this appeal are present on the public streets on which the properties front which are served by the subject installation.

Electric power lines for the transmission and distribution of electric energy are clearly a public use of property for eminent domain purposes. (Code Civ. Proc., § 1238, subd. 13.) The exercise of the power of eminent domain for such purpose is conditioned upon the necessity of the taking. (Code Civ. Proc., § 1241, subd. 2; *Linggi* v. *Garovotti*, 45

Cal.2d 20, 26 [286 P.2d 15].) In this connection we note that defendant did not allege a necessity for the use of the power installation on plaintiffs' property in its answer or as an issue in the joint pretrial statement incorporated in the Pretrial Conference Order.)

*Madera Ry Co.* v. *Raymond Granite Co.*, 3 Cal.App. 668 [87 P. 27], held that a right of way for a spur track about a mile in length serving solely a competing, we assume, granite quarry, and where the creation of the railroad corporation by the persons interested in the benefitted quarry was for the very purpose of the eminent domain proceeding nevertheless qualified as a public use. Reliance was had upon the language of *Sherman* v. *Buick*, 32 Cal. 241, 253 [91 Am.Dec. 577], where it was said, ''Whether a way be public or private does not depend upon the number of people who use it, but upon the fact that everyone may lawfully use it who has occasion.''

*Madera Ry Co., supra,* refers to the necessity for the use in these words: ''As the necessity for the taking of the particular property must be made to appear by proof, at least *prima facie,* the burden is upon the plaintiff [in eminent domain] to show 'that the taking is necessary to such use.' (Lewis on Eminent Domain, sec. 426.)'' (Pp. 676-677.) No further consideration was given, however, to this point.

In *Gurnsey* v. *Northern Cal. Power Co., supra,* 160 Cal. 699, 709, it was held that the unauthorized installation of a power pole line on a highway easement without objection ''until public interests by reason of the construction, had intervened'' relegated the landowner to an action solely for damages. The extent of the use of the 2-mile line did not appear but the findings were that the line was not installed and used for any purposes described in the franchise from the county purporting to authorize the installation of the line along the highway.

*Southern Pac. Co.* v. *Los Angeles Mill. Co.,* 177 Cal. 395 [170 P. 829], follows *Madera Ry. Co.* v. *Raymond Granite Co., supra,* 3 Cal.App. 668, except that the action was by the public utility against the landowner to enjoin the threatened destruction of the spur track facilities and the granting of an injunction was affirmed.

In *Churchill* v. *Kellstrom,* 58 Cal.App.2d 84 [136 P.2d 602], it was held that the use of an area of land for turning vehicles and as access to the depot and loading platform of the railroad was a public use of the area by the railroad.

We are not aware of any cases which define a public electri-

cal distribution system in terms of "public use" in more restrictive terms than have already been mentioned. The cases cited found the question of "public use" not upon the fact of who or how many may be using or may be expected to use the particular service, but rather upon whether use of the service is available to anyone in a position to use it regardless of who he may be. This is the sense of *Madera Ry. Co., supra,* and *Sherman* v. *Buick, supra,* 32 Cal. 241 *(Cf., Linggi* v. *Garovotti, supra,* 45 Cal.2d 20.) ▉▉▉▉ We conclude that the court below correctly found that the power poles and lines here involved are devoted to a public, albeit limited, use.

▉▉▉▉ Code of Civil Procedure, section 1241, subdivision 2 requires a showing of necessity for the taking as a condition to the exercise of the power of eminent domain. No mention of necessity was made in defendant's answer or in the pretrial order. Plaintiffs did make an effort to show lack of necessity by evidence leading to the inference of available power lines on the adjacent public streets.

Mr. Slemons, one of the plaintiffs, testified that the electrical service to his used car lot could be brought from a nearby alley over defendant's easement on another portion of plaintiffs' property without use of the poles involved in this litigation; that his building was already being serviced by the alternate facilities suggested by him. He also testified to the fact of defendant's power line on the west side of Main Street south from Warner; that two other customers served by defendant over the protested line both fronted on Main Street and that one of them was at the corner of Main and Warner Streets. Defendant's district superintendent confirmed the fact of the power line on the west side of Main Street and that it served miscellaneous industrial and residential users— "anything along Main Street." No express finding was made relative to the question of necessity. The question whether a showing of necessity is vital to the defense of public use as pleaded perhaps is raised in effect by plaintiffs' argument that no substantial public interest has been shown.

In *Stone* v. *Cordua Irr. Dist.,* 72 Cal.App. 331, it is said at page 336 [237 P. 554] : " [T]he constitutional rights of a citizen ought not to be abridged on the ground of public policy unless the welfare of the public is really and substantially involved." An injunction against further use of a drainage ditch was granted. It must be noted the plaintiff had no foreknowledge of the intrusion upon his property which had resulted in serious flooding. of plaintiff's agricultural lands.

The court did not define what it meant by "really and substantially involved."

*Churchill* v. *Kellstrom, supra,* 58 Cal.App.2d 84, cited *Stone* v. *Cordua Irr. Dist., supra,* with this language at page 89 : "However, an owner cannot be precluded unless a substantial public use is involved." The court had already held a substantial public use to have been proved and the statement was not necessary to the decision. Defendant relies upon *Smith* v. *Pacific Gas & Elec. Co.,* 132 Cal.App. 681 [23 P.2d 444], to establish that proof of public use, regardless of nature, degree or conditions is sufficient to avoid injunctive relief. We are unable to accept the decision as such broad authority. Neither of these cases can be considered authority for or against the necessity of showing necessity to defeat the injunction or as help in defining what is a substantial public interest. If necessity for exercising a public use in a particular place is shown, however, it would follow reasonably that a substantial public interest had been shown.

Our Supreme Court has recently had occasion to consider this subject in relation to the propriety of a summary judgment in favor of a public utility and against a landowner. In *Pettis* v. *General Tel. Co. of Cal, supra,* 66 Cal.2d 503, the plaintiff purchased real property with neither actual nor constructive notice of underground utility lines. We quote from that case : " [I]t is apparent that he raised at least one triable issue of fact; namely, whether he was a bona fide purchaser for value without prior notice or knowledge of defendants' claims of right to maintain their lines through his land and to come upon it to gain access to them. If at trial he establishes his position as such, then his rights in the land must be deemed superior and prior to those claimed by defendant utility companies and he will be entitled to his remedy. [Citations.] Cases cited by defendants do not involve the rights of bona fide purchasers for value without notice, and need not be otherwise discussed or distinguished. In the only case cited which dealt with buried utility lines, the easement therefor was expressly reserved in recorded documents. [Citation.]

"Defendants urge that plaintiff is not entitled to injunctive relief or to quiet title against them, because his property has been put to a public use and the public interest has intervened. If at trial defendants establish the *necessity* of maintaining their utility lines through plaintiff's property,

then plaintiff will be relegated to the remedy of damages as in inverse condemnation. [Citations.]'' (Pp. 506-507.) (Italics added.)

In the case at bench the facts differ in that the plaintiffs are not bona fide purchasers for value without notice. The prime importance of that fact is that it subordinates the plaintiffs to the rights of the defendant as the latter may be able to establish them. (*Pettis* v. *General Tel. Co. of Cal.,* *supra,* 66 Cal.2d 503.) Such subordination is, however, only to such rights as existed at the time plaintiffs acquired the property. It does not create rights greater than those which existed before such acquisition. The fact the plaintiffs took with notice does not eliminate the requirement that defendant establish the necessity of maintaining its improvement upon plaintiffs' property.

We consider defendant's remaining contentions in reverse order.

1. *Did defendant acquire an easement by prescription?* No.

Defendant claims that the trial court erred in finding that the installation and maintenance of the power poles and lines were permissive and that defendant's occupation and use was not hostile or adverse. We do not agree. *O'Banion* v. *Borba,* 32 Cal.2d 145, at page 149 [195 P.2d 10], states the rule: ''The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. . . . There seems to be no apparent reason for discussing the matter from the standpoint of presumptions. For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements.''

The evidence relating to this matter was presented in a highly casual and far from satisfactory manner. It appears, however, by what the court was entitled to take as the stipulation of the parties that at the times of installation there existed but a single parcel and ownership of the land involved and that the installation was by permission. This was evidence sufficient to support the finding against hostile and adverse possession.

3. *Is defendant entitled to the benefit of the irrevocable license doctrine?* No.

Defendant contends that having been granted permission to install and maintain power poles and lines and having

expended monies in doing so, it had an irrevocable license to continue use and maintenance of the installed facilities. (See *Cooke* v. *Ramponi,* 38 Cal.2d 282 [239 P.2d 638].) We have not been referred to, nor have we found a case in which a public utility effectively called that doctrine into play. We are unable to apprehend a basis upon which the application of that doctrine could be justified in favor of a public utility whose very *raison d'etre* and obligation is to provide the service which the installation of poles and lines upon its customer's land enables it to do. We consider such a state of facts to afford a valid distinction from those cases which give expression to the rule of irrevocable license.

2. *Is plaintiffs' action barred by the statute of limitations?* No.

In view of the finding that occupancy of the land was by permission, no cause of action arose until demand was made for removal of the poles and lines and it was refused. The statute of limitations started to run at that time and the action was commenced well within the applicable statute.

Examination of the record discloses that defendant did not request a finding that the public use to which its poles and lines are put is substantial or necessary. Familiar rules requiring support of the findings and judgment justify implied findings against the defendant on those issues.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied August 16, 1967, and appellant's petition for a hearing by the Supreme Court was denied September 21, 1967.