[Civ. No. 3690. Fifth Dist. Sept. 6, 1979.]

NICHOLAS KACHADOORIAN, Plaintiff and Respondent, v.
CALWA COUNTY WATER DISTRICT, Defendant and Appellant.

**COUNSEL**

Staniford, Harris, Loomis & Home and John E. Loomis for Defendant and Appellant.

Edward V. Marouk for Plaintiff and Respondent.

**OPINION**

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

Appellant, a municipal utility, appeals from a judgment quieting title in respondent to certain real property in Fresno County and enjoining appellant from further asserting any interest in the property. The property consists of two lots with a common boundary along which a public alley formerly ran. Respondent is the owner of both lots. A water line belonging to appellant runs along the boundary in the strip where the alley was located. The county abandoned the alley in 1971. Afterwards respondent demanded that appellant vacate the former alleyway. When appellant refused to comply, respondent filed the present lawsuit.

Appellant's position is that it owns an easement in the strip for its water line pursuant to the state's grant to municipal corporations of utility rights along and under alleyways as set forth in Public Utilities Code section 10101.[1] Appellant contends that its right to maintain the pipeline survived the county's abandonment of the alley. Appellant also challenges the validity of the abandonment proceedings on jurisdictional grounds arguing that the county failed to comply with the statutory notice requirements for abandoning a public highway. Appellant also questions respondent's right as a private party to sue appellant, a public agency.

The trial court rejected appellant's contentions concluding that the 1971 abandonment was effective and that appellant's right to maintain the pipeline under the alley did not survive the abandonment. It further found that appellant had not shown a substantial public interest in the property in that there was no real necessity for maintaining the line across respondent's property. It granted the injunction and quieted title in respondent. This appeal followed.

FACTS

Respondent in 1968 and 1970 acquired two adjoining lots in an unincorporated area of Fresno County. A public alley, dedicated to the county in 1911, then extended along the common boundary of the two lots, physically dividing them. The alley was no longer in use as an alley, having been fenced at one end by the county in 1964 incident to highway alteration that required closing it to through travel.

In 1929, the county granted to a private water company, appellant's predecessor, a franchise for a term of 40 years to locate and maintain a pipeline under the alley along its length. A pipeline was installed about 1929 and has been in existence ever since. Appellant, a county water district, was organized in 1956 and acquired the pipeline as part of the franchise and water system of the private water company.

The 1929 franchise expired in 1969 and was not renewed.

---

[1]Section 10101 provides: "There is granted to every municipal corporation of the State the right to construct, operate, and maintain water and gas pipes, mains and conduits, electric light and power lines, telephone and telegraph lines, sewers and sewer mains, all with the necessary appurtenances, across, along, in, under, over, or upon any road, street, alley, avenue, or highway, and across, under, or over any railway, canal, ditch, or flume which the route of such works intersects, crosses, or runs along, in such manner as to afford security for life and property."

In 1971, the county board of supervisors at respondent's request agreed to abandon the alley. A resolution of abandonment was adopted by the board on December 28, 1971. Although appellant had received actual notice of the hearing on the proposed abandonment, it did not appear or request a reservation of its utility rights along the alley as authorized by Streets and Highways Code sections 959.1 and 960.

## THE ALLEY WAS EFFECTIVELY ABANDONED BY THE COUNTY IN 1971

■ Appellant contends that the county failed to follow the statutory notice and publication procedures for abandonment of the alley and, hence, the purported abandonment was void and appellant's right to use the alley for its pipeline continues unabated. Appellant's contention must fail.

Streets and Highways Code sections 956.8 through 960 specify the abandonment procedure used in this case. Section 956.8 calls for a resolution by the board of supervisors declaring its intention to abandon the alley. Section 958 requires the board to fix a day for hearing the resolution and to give notice to all freeholders in the road district of the time and place fixed for the hearing. Such notice is to be published in a newspaper of general circulation in the county, designated in the order by the board, "for *at least* two successive weeks prior to the day fixed for the hearing." The further requirement is made that the notice be posted along the line of the highway proposed to be abandoned for at least two weeks prior to the date fixed for the hearing. No evidence was presented in the trial court as to the actual posting and publication of the notice required by section 958. It was stipulated, however, and the trial court found that on December 14, 1971, the board adopted a resolution to abandon the alley and gave notice of its intention to abandon at a hearing set for December 28, 1971. On December 28, 1971, the board made its order of abandonment which was recorded the next day in the county's official records.

Appellant argues that the two weeks publication requirement of section 958 could not possibly have been met in the interval between the adoption of the resolution on December 14 and the hearing on December 28. Appellant is incorrect; it is entirely possible that the notice was first published on December 14—the date of the board of supervisors meeting at which the resolution of intended abandonment was adopted and which would have satisfied the 14-day notice requirement of the statute. Since

the statutory posting and publication requirements could have been met, and since the appellant presented no evidence that they were not met, the evidentiary presumption that official duty was regularly performed (Evid. Code, § 664) comes into play. Absent evidence that the statutory notice procedure was not complied with, it must be presumed that the clerk of the board of supervisors fully performed his duty of giving notice to all freeholders in the district by publication and posting for at least two successive weeks prior to the date fixed for the hearing as required by section 958. (Evid. Code, § 664; cf. *Phillips* v. *Seely* (1974) 43 Cal.App.3d 104, 120 [117 Cal.Rptr. 863].)

### APPELLANT'S RIGHT TO MAINTAIN THE PIPELINE IN THE ALLEY TERMINATED UPON THE COUNTY'S ABANDONMENT OF THE ALLEY

Appellant had actual notice of the abandonment proceedings yet it failed to appear before the board of supervisors to seek a reservation of its right to maintain the pipeline along the alleyway as authorized by Streets and Highways Code sections 959.1 and 960.[2]

Appellant, nonetheless, contends that it acquired a permanent easement for the pipeline by operation of Public Utilities Code section 10101.[3] The contention does not withstand analysis. In *State of California* v. *Marin Mun. W. Dist.* (1941) 17 Cal.2d 699, at page 703 [111 P.2d 651], our Supreme Court explained that public utility districts are municipal corporations within the intendment of section 10101 and that the rights obtained by a public utility under statutes similar to section 10101 have always been considered *franchises* by the courts of this state. The statutory grant does not give the public utility a proprietary right in the land but merely a limited right to use the streets to the extent necessary to furnish its services to the public. (See also *Pacific Tel. & Tel. Co.* v. *Redevelopment Agency* (1977) 75 Cal.App.3d 957, 963 [142 Cal.Rptr. 584].) A franchise is a special privilege conferred by the government on an individual or a corporation (Black's Law Dict. (4th ed. 1968) p. 786; see also 12 McQuillin, Municipal Corporations (rev. ed. 1970) § 34.03, pp. 9-15). Where the franchise is not based on a contract, it is terminable at the will of the governmental entity (*id.,* § 34.47, pp. 128-

---

[2]Whether a reservation of public utility rights as authorized by Streets and Highways Code sections 959.1 and 960 would have conferred any special right on appellant vis-à-vis respondent as owner of the underlying fee is questionable indeed. The issue is not before us.

[3]See footnote 1, *ante,* page 744.

130). In the present case, the original 1929 franchise between the county and appellant's predecessor expired in 1969. It was not renewed. Furthermore, appellant's right to maintain the utility line under Public Utilities Code section 10101 was not perfected by an agreement with the county as to location, terms and conditions as provided by sections 10103 and 10104. Thus, appellant's franchise at the time of the abandonment proceedings constituted a mere license to use the alley for utility lines revocable at the will of the county (*id.,* § 34.51, pp. 137-138).

Upon abandonment by the county of its right-of-way, full title to the land reverted to respondent, the underlying fee owner (Sts. & Hy. Code, § 960.3). Appellant, not having any property right insofar as respondent's land, became a trespasser as to respondent. Public Utilities Code section 10101 can give appellant no property right as against respondent since this would increase the burden on respondent's land which would constitute a "taking" of respondent's property without just compensation.

### THE TRIAL COURT ERRED IN QUIETING TITLE IN RESPONDENT AND ENJOINING APPELLANT'S USE OF THE LAND

 Where a public utility subjects a landowner's property to a public use and the necessity of maintaining the use has been established, the landowner is not entitled to quiet title or to injunctive relief; rather, his remedy is by way of damages in the nature of inverse condemnation. (*Pettis* v. *General Tel. Co.* (1967) 66 Cal.2d 503, 507 [58 Cal.Rptr. 316, 426 P.2d 884]; *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548].) In *Gurnsey* v. *Northern Cal. Power Co.* (1911) 160 Cal. 699 at page 709 [117 P. 906], it is stated: "While the general rule is that one may maintain ejectment against either an individual or corporation who has without right entered upon his land, this rule is subject to some exceptions. One of these exceptions is applied in the case of public service corporations when it appears that, although the entry was originally without rights, the owner permitted the corporation to make the entry on his land and complete and construct the works for which his land was appropriated, and failed to bring any action until after public interests, by reason of the construction, had intervened. Under such circumstances the right to maintain ejectment is denied and the owner of the land is remitted to an action for damages alone."

 In the present case, the trial court recognized the general rule as to public use corporations but decided that appellant had failed to show a

substantial public use in that it was not really necessary for appellant to maintain the pipeline across respondent's property; there were other reasonable alternatives available to it. The trial court particularly relied on *Slemons* v. *Southern Cal. Edison Co.* (1967) 252 Cal.App.2d 1022 [60 Cal.Rptr. 785] for the proposition that absent a clear necessity for the utility's maintenance of its equipment across the private land of another, the latter is entitled to injunctive relief. We believe, however, that *Slemons* is distinguishable on its facts, and if not, we are unpersuaded by its holding.

In *Slemons* the defendant power company was claiming the right to maintain some unsightly overhead power lines on plaintiff's land although the line served only three customers and alternative ways of reaching these customers were feasible. (Other power poles were present on the public streets fronting the customers' properties.) In holding that the public need was outweighed by the detriment to plaintiff's property suffered from the power lines, the court particularly noted that the defendant had not alleged a necessity for the use of the power lines on plaintiff's property (*id.,* at p. 1027); the plaintiff had shown the presence of available power lines on the adjacent public streets (*id.,* at p. 1028), and the defendant did not request a finding that the public use to which its poles and lines were put was necessary to their operations (*id.,* at p. 1031). The court alluded to the fundamental rule that the burden is upon a plaintiff in a condemnation proceedings to prove that the taking is necessary for a public use (Code Civ. Proc., § 1241, subd. 2, now Code Civ. Proc., § 1240.030). The court apparently then reasoned that a substantial public use exists only when the facts show the unavailability of alternate means of servicing the utility's customers and affirmed the issuance of the injunction.

In the present case, the trial court made the following findings on the public use question: "Said pipeline serves no residents or other customers of defendant adjoining the alleyway in question, but does connect with another pipeline of defendant's system so as to provide circulation of water in said line with other portions of this system." Since the pipeline is part of appellant's water system that serves the public, it is of no consequence that respondent or others adjoining the alleyway are not served by it. The findings also dwell on the point that the pipeline has been in place about 50 years which is the estimated life of the pipe; however, since there is no evidence that the water system itself is phasing out, the fact that the pipeline may have to be repaired in the near future becomes irrelevant.

The trial court made a finding on the injunction issue as follows: "The maintenance of defendant's water pipeline through plaintiff's property is not necessary to accomplish defendant's purposes and requirements. [¶] It is reasonable under the circumstances to require defendant, at a cost of approximately $500, to install a fire hydrant or cleanout valve on the pipeline in question at a point south of plaintiff's property or, in the alternative, run a line from the line in question at a point south of plaintiff's property to the four-inch line 340 feet west or to the eight-inch line northeast of plaintiff's property." This finding shows that the trial court balanced "the equities." It found that respondent's property right outweighed appellant's public service right in granting injunctive relief. This approach is contrary to the law involving public service corporations (*Pettis* v. *General Tel. Co., supra,* 66 Cal.2d 503; *Gurnsey* v. *Northern Cal. Power Co., supra,* 160 Cal. 699). It conflicts with the well established eminent domain rule that " 'necessity does not signify impossibility of [maintaining] the improvement . . . without taking the land in question, but merely requires that the land be *reasonably suitable* and useful for the improvement.' " (Italics added, *City of Hawthorne* v. *Peebles* (1959) 166 Cal.App.2d 758, 763 [333 P.2d 442]; *Rialto Irrigation Dist.* v. *Brandon* (1894) 103 Cal. 384 [37 P. 484]; see also 1 Nichols on Eminent Domain (rev. 3d ed. 1975) § 4.11[3], pp. 4-179 to 4-199; Legislative Com. com. (1975) Code Civ. Proc., § 1240.030.) In short, the absence of a substantial public use which would justify injunctive relief rather than compensation in damages is not established merely by showing the existence of other physical alternatives to the use of a landowner's property any more than such a showing would foreclose the public utility's right to condemn the property if it had chosen to do so. In such a situation, the utility's resolution of necessity required under Code of Civil Procedure section 1245.220 would be conclusive on the issue (see Code Civ. Proc., § 1245.250, subd. (a); see also 5 Witkin, Summary of Cal. Law (8th ed. 1978 supp.) Constitutional Law, § 702A, p. 297).

In the present case, the pipeline across respondent's land has been in use as part of a community water system for approximately 50 years, which establishes a strong presumption of public necessity for continued use of respondent's land. The trial court found that the pipeline "does connect with another pipeline of defendant's system so as to provide circulation of water in said line with other portions of this system." The rather speculative testimony by respondent based on his experience in construction work that the pipeline could be plugged at both ends and hydrants or cleanout valves could be installed for a cost of about $500 or that the pipeline could be rerouted around respondent's property (at a

cost not indicated in the testimony) does not overcome the presumption of the public necessity of maintaining the pipeline in its present location.

In summary, appellant has been a trespasser on respondent's property since the 1971 abandonment of the alleyway. However, because of the public use and necessity of maintaining the pipeline in its present location, respondent is not entitled to quiet title or to injunctive relief but is relegated to an action for damages for the taking of his property. Respondent should amend his complaint to seek damages on the theory of inverse condemnation.[4]

The judgment is reversed.

Zenovich, J., and Davis, J.,* concurred.

A petition for a rehearing was denied September 28, 1979.

---

[4]Government Code section 905.1 provides in pertinent part: "No claim is required to be filed to maintain an action against a public entity for taking of, or damage to, private property pursuant to Section 19 of Article I of the California Constitution."

*Assigned by the Chairperson of the Judicial Council.